UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


UNITED STATES OF AMERICA

v.  CASE NO. 3:06-cr-211(S1)-J-32HTS

TONY HENDERSON
 a/k/a Hollywood

**UNITED STATES' MEMORANDUM OF LAW ON THE
ADMISSIBILITY OF TAPE RECORDINGS AND TRANSCRIPTS**


I.  TAPE RECORDINGS

   A.  Foundation

   1. Introduction

The party seeking to introduce a sound recording into evidence has the burden of producing foundation evidence demonstrating that "the recording as played is an accurate reproduction of relevant sounds previously audited by a witness." United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977). Once the moving party, generally the government, has established the foundation, the opposing party has the burden of rebutting it. United States v. Sarro, 742 F.2d 1286, 1292 (11th Cir. 1984). To establish the foundation the moving party must show:

   a.  The competency of the operator of the recording equipment;

   b.  The fidelity of the recording equipment;

   c.  The absence of material deletions, additions, or alterations in the relevant portions of the recording; and

   d.  The identity of the relevant speakers.

United States v. Biggins, 551 F.2d at 66; United States v. Lively, 803 F.2d 1124, 1129 (11th Cir. 1986); United States v. Cuesta, 597 F.2d 903, 914 (5th Cir.), cert. denied, 444 U.S. 964 (1979).

2.  The Competency of the Operator

Competency of the operator may be shown if the witness testifies as to some training or familiarity with the recording equipment. The existence of the recording itself, however, is circumstantial evidence that the person who made it was competent. United States v. Bright, 630 F.2d 804, 819 (5th Cir. 1980); United States v. Franklin, 747 F.2d 497, 498 (8th Cir. 1984). Evidence that the government agents who monitored the tape recordings were first instructed on the use of the recording equipment has been held sufficient to satisfy the competency of the operator requirement. United States v. Cuesta, 597 F.2d at 914.

3.  The Fidelity of Equipment/Audibility

With respect to the fidelity requirement, at least one Court has held that "the very fact of the existence of the tape recordings establishes that the recording devices were capable of picking up sounds." United States v. Moss, 591 F.2d 428, 433 (8th Cir. 1979). It is not unusual for undercover recordings to be of less than perfect quality because of conditions often inherent in such activity, that is, background noise or one person closer to the microphone than others, for example. Although the tape recorder must be able to record an intelligible tape, a pretrial hearing to determine audibility is neither required nor desirable. "[T]ape recordings which are partially inaudible are not inadmissible per se unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. This determination is left to the sound discretion of the trial judge." United States v. Avila, 443 F.2d 792, 795 (5th Cir.),

cert. denied, 404 U.S. 944 (1971); accord United States v. Lively, 803 F.2d 1124, 1129 (11th Cir. 1986).  See also United States v. Nicoll, 664 F.2d 1308, 1314 (5th Cir.), cert. denied, 457 U.S. 1118 (1982); United States v. Sutherland, 656 F.2d 1181, 1200 (5th Cir. 1981), cert. denied, 455 U.S. 949 (1982); United States v. Wilson, 578 F.2d 67, 69 (5th Cir. 1978); United States v. Greenfield, 574 F.2d 305, 307 (5th Cir. 1977), cert. denied, 439 U.S. 860 (1978).

If there is a question, the Court should listen to the recording prior to ruling and hear any other evidence relevant to determining whether the inaudible segments render the tape untrustworthy.  A District Court has broad discretion to admit a tape despite inaudible portions and its ruling will not be disturbed on appeal absent an abuse of discretion.  United States v. Llinas, 603 F.2d 506, 508 (5th Cir. 1979), cert. denied, 444 U.S. 1079 (1980); United States v. Clements, 484 F.2d 928, 930 (5th Cir. 1973), cert. denied, 415 U.S. 991 (1974).  Use of a transcript may help a jury understand parts of a tape that are difficult to hear.  United States v. Ruppel, 666 F.2d 261, 271 (5th Cir. Unit A), cert. denied, 458 U.S. 1107 (1982).

### 4. The Absence of Alteration

The proponent also must show that the proffered tape is "a faithful recording of the conversation that took place." United States v. Biggins, 551 F.2d at 67.  This simply means that the evidence must show that the tape has not been altered in the relevant portions of the recording.  The "possibility of alterations to the tape need not be eliminated absolutely, but only as a reasonable possibility."
United States v. Bright, 630 F.2d at 819. Further, the evidence of accuracy may be either direct or circumstantial.  For example, punching the tabs of cassette tapes to

3

prevent re-recording immediately after the recording is made is circumstantial evidence of lack of tampering with the tapes.  Id. at 820.

Short conversational gaps on a tape resulting from the changing of a spent tape to a new tape does not render the tape as a whole untrustworthy.  United States v. Nicoll, 664 F.2d at 1314; United States v. Lively, 803 F.2d at 1129.  Similarly, brief gaps from microphone malfunctions do not render the recording untrustworthy.  United States v. Johnson, 767 F.2d 1259, 1271 (8th Cir. 1985).  Even in those circumstances where the informant or the undercover agent who gave consent is dead, United States v. Bright, 630 F.2d at 819, or unavailable, United States v. Fuentes, 563 F.2d 527, 532 (2d Cir.), cert. denied, 434 U.S. 959 (1977), the tape is still admissible as long as circumstantial or direct evidence exists that there is no "reasonable possibility" that the tapes were altered.  United States v. Bright, 630 F.2d at 819 (citations omitted).

5. The Identification of Speakers

In the case of consensually-made tapes, the usual way of identifying the speakers is by the testimony of the consenting participant who was present and thus familiar with the other persons' voices.  United States v. Biggins, 551 F.2d at 68.  That is not the only way, however.  Fed. R. Evid. 901(b)(5) provides that identification may be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."  United States v. Cuesta, 597 F.2d at 915.  Thus, an agent who before or afterward becomes familiar with a person's voice may identify the voice.  Id.; see also United States v. Di Muro, 540 F.2d 503, 513 (1st Cir. 1976) (voice identification proper even though the agent first heard the defendant's voice four years after the tape was made), cert. denied, 429 U.S. 1038 (1977).

Once this minimal showing of familiarity has been made, it is up to the jury to determine the weight to accord the identification testimony. United States v. Cuesta, 597 F.2d at 915; see also United States v. Alvarez, 860 F.2d 801, 809 (7th Cir. 1988), cert. denied, 490 U.S. 1051 (1989); United States v. Smith, 635 F.2d 716, 719 (8th Cir. 1980). A speaker on the tape who identifies himself in the conversation provides his own identification. United States v. Cuesta, 597 F.2d at 915.

 6. The Discretion of the Trial Court

These authenticity issues are governed by Fed. R. Evid. 901(a), and hence are evidentiary issues at trial, and are not the appropriate subject of pretrial motions to suppress. "The determination to admit tape recordings into evidence rests in the discretion of the trial court." United States v. Shabazz, 724 F.2d 1536, 1540 (11th Cir. 1984). Accord United States v. Lively, 803 F.2d at 1129; United States v. Llinas, 603 F.2d at 508.

The trial judge has broad discretion in admitting tape recordings and the appeals court is "extremely reluctant" to disturb the trial court's decision. United States v. Biggins, 551 F.2d at 67. Indeed, the Court may make an independent determination that the recording is an accurate one and such a determination will "not be sacrificed to a formalistic adherence" to the standards. Id. The issue is whether a prima facie showing has been made that the tapes were what the government said they were. United States v. Scully, 546 F.2d 255, 269 (9th Cir. 1976), cert. denied, 430 U.S. 970 (1977); see also United States v. Shabazz, 724 F.2d at 1539 (citing prima facie standard of Scully in pirate tape case).

5

Thus, in Biggins, although the government had failed to elicit testimony that a duplicate recording was an exact reproduction of the original, the court upheld its admission because of other testimony about the content of the conversation it purportedly recorded which supported its admission as an accurate reproduction. Id. "The record thus reveals a correspondence between the agents' accounts of the conversation and the version evidenced by the sound recording sufficiently close to lessen the importance of explicit testimony that the recording itself was accurate." Id.; see also United States v. Avila, 443 F.2d at 796 (trial court's admission of tapes and translated transcripts as accurate supported by fact that person who carried recording device was witness in trial and subject to cross-examination).

Similarly, even where no evidence of the fidelity of the equipment was shown, the remainder of the proof of accuracy was sufficient to uphold the trial court's discretion to admit the tapes. United States v. Richardson, 764 F.2d 1514, 1524 (11th Cir.), cert. denied, 474 U.S. 952 (1985). Further, failure to prove competency of the operator has not been error in view of proof of accuracy of the tape recording. United States v. Hughes, 658 F.2d 317, 322-23 (5th Cir. 1981), cert. denied, 455 U.S. 922 (1982).

Profanity on the tape recording related to irrelevant matters has been held to constitute harmless error, where the remarks were not of such an inflammatory character as to have affected the verdict. United States v. Harbin, 601 F.2d 773, 780 (5th Cir.), cert. denied, 444 U.S. 954 (1979).

B. Duplicate Tape

Under Fed. R. Evid. 1003, a duplicate is as admissible as the original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under

6

the circumstances it would be unfair to admit the duplicate in lieu of the original. Testimony that duplicates accurately reflect the conversations is sufficient to admit the duplicates. United States v. DiMatteo, 716 F.2d 1361, 1368 (11th Cir. 1983), vacated on other grounds, 469 U.S. 1101 (1985).

    C.    Composite Tape

Use of a composite tape of selected parts of numerous or lengthy recordings is permissible and encouraged in order to save time for both the jury and the court and to avoid needlessly confusing the jury with extraneous matters. United States v. Denton, 556 F.2d 811, 815-16 (6th Cir.), cert. denied, 434 U.S. 892 (1977); United States v. Cuesta, 597 F.2d at 915. Fed. R. Evid. 1006 provides for use of summaries, if the full originals or duplicates are available for the opposing party to examine. See United States v. Clements, 588 F.2d 1030, 1039 (5th Cir.), cert. denied, 440 U.S. 982 (1979).

    D.    Third Party's Voice

If the voice of a party not involved in the case and not a co-conspirator is on the tape, the sound should be turned down so the jury cannot hear the voice. An occasional slip not containing prejudicial information is harmless error. United States v. Tibbetts, 646 F.2d 193, 195 (5th Cir. 1981).

    E.    Enhanced or Filtered Tapes

Filtering or use of a noise suppression machine to improve the audibility of a tape does not render it inadmissible. Fountain v. United States, 384 F.2d 624, 631 (5th Cir. 1967), cert. denied, 390 U.S. 1005 (1968). The treated copy is admissible. Id.; see also United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986); United States v. Slade, 627 F.2d 293 (D.C. Cir.), cert. denied, 449 U.S. 1034 (1980); United States v.

Biggins, 551 F.2d at 67.  Testimony as to the filtering process and accuracy of the tapes should be offered.  United States v. Slade, 627 F.2d at 301.

    F.    <u>Testimony About the Recorded Conversation</u>

Even though the tapes are played for the jury, an agent or participant may still offer testimony explaining the content of the conversation.  United States v. Russell, 703 F.2d 1243, 1248 (11th Cir. 1983).  Occasionally, words or phrases on tapes and transcripts may be subject to interpretation.  The lexicon of the drug community, for example, may not be familiar to the lay person.  Also, people who transact illicit business may attempt to disguise their illegal activities through the use of code words.  In such cases it is necessary to interpret the spoken word for the jury.  A party to the conversation, as well as an expert in drug parlance, may testify as to his understanding of the meaning of words used by the participants in the conversation.  United States v. Alvarez, 860 F.2d at 813-15; United States v. Franklin, 747 F.2d at 498; United States v. Riccobene, 709 F.2d 214, 230 (3d Cir.), cert. denied, 464 U.S. 849 (1983); United States v. Cirillo, 499 F.2d 872, 881 (2d Cir.), cert. denied, 419 U.S.1056 (1974); Fed. R. Evid. 702.  Moreover, an agent who consensually monitored and recorded the conversation may testify as to the underlying conversation.  In United States v. Howard, 953 F.2d 610, 612 (11th Cir. 1992), the defendant's claim that the tape (which was only partially audible) constituted the best evidence was rejected, since the testimony of the agent was offered, not to prove the content of the tape recording, but rather the content of the underlying conversation.

II.    <u>TRANSCRIPTS</u>

    A.    <u>Authentication</u>

Federal law encourages the use of transcripts as an aid in understanding

the tape recordings and identifying speakers.  United States v. Nixon, 918 F.2d 895, 901 (11th Cir. 1990); United States v. Onori, 535 F.2d 938, 948 (5th Cir. 1976).

In Onori, the Fifth Circuit established the proper procedure for transcript preparation.  First, the parties should try to prepare a stipulated transcript that all parties agree is accurate.  If the parties cannot agree, each party should be allowed to present its own transcript to the jury, along with whatever evidence supports its version, and the jury resolves the dispute in the traditional fact-finding manner.  Id. at 948-49.  Indeed, it is incumbent upon the defense to offer its own transcript if it contends that the government's version is inaccurate.  United States v. Rosenthal, 793 F.2d 1214, 1238 (11th Cir. 1986), cert. denied, 480 U.S. 919 (1987); United States v. Cruz, 765 F.2d 1020, 1023 (11th Cir. 1985) (defendant cannot complain on appeal about accuracy of government's transcript when he had opportunity to, but elected not to, proffer his own transcript).

The proponent should put on evidence of the accuracy of its transcript. United States v. Sutherland, 656 F.2d at 1201; United States v. Rochan, 563 F.2d 1246, 1251 (5th Cir. 1977); United States v. Onori, 535 F.2d at 946.  The transcriber need not testify if an agent or participant in the conversation has compared the transcript to the recording and testifies as to its accuracy.  United States v. Rochan, 563 F.2d at 1251.

B.   Transcripts are Evidence

Although transcripts properly are described as "aids," they also are items of substantive evidence, albeit secondary to the recording.  United States v. Onori, 535 F.2d at 947.  As the Court in Onori stated:

> It is therefore incorrect to think of the transcripts as simply an
> 'aid' -- as better lighting fixtures in the courtroom would be an

9

> 'aid' to the jury's vision of witnesses --and not as evidence of
> any kind. They are evidence and, like other evidence, may
> be admitted for a limited purpose only.

Id.; see also United States v. Sutherland, 656 F.2d at 1200 n.15 ("a transcript is evidence of what is recorded on an audio tape, just as the tape is evidence of what was said in the original conversation.")  Accordingly, where cautionary instructions regarding the use of the transcripts have been given, as proposed by the government in this case, it is a "settled question" that the jury shall have access to the transcripts during its deliberations. United States v. Nixon, 918 F.2d at 902; see also United States v. Cruz, 765 F.2d at 1023 ("clear that transcripts may be used as substantive evidence"); United States v. Williford, 764 F.2d 1493, 1503 (11th Cir. 1985) (absent a showing that the transcripts were inaccurate or that specific prejudice occurred, there is no error in allowing transcripts to go to the jury room); United States v. Costa, 691 F.2d 1358, 1362-63 (11th Cir. 1982) (no error for transcripts not formally offered into evidence being used by jury during deliberations because "transcripts are evidence admissible to aid the jury"); accord United States v. Larson, 722 F.2d 139, 145 (5th Cir. 1983), cert. denied. 466 U.S. 907 (1984); United States v. Wilson, 578 F.2d 67 (5th Cir. 1978); United States v. Rochan, 563 F.2d 1246 (5th Cir. 1977); United States v. Carson, 464 F.2d 424, 437 (2d Cir.), cert. denied, 409 U.S. 949 (1972); United States v. Koska, 443 F.2d 1167, 1169 (2d Cir.), cert. denied, 404 U.S. 852 (1971).

As with any other piece of evidence that has been admitted, the jury is free to listen to tape recordings or read the corresponding transcript more than once, just as they might repeatedly examine a photograph, bank record or written confession admitted into evidence.  As the Court noted in United States v. Vadino, 680 F.2d 1329,

1338 (11th Cir. 1982), cert. denied, 460 U.S. 1082 (1983), "it was not error. . . to grant the jury's request to rehear taped conversations between agents and defendants but to deny the jury's request for written transcript of testimony of agents." Accord United States v. Zepeda-Santana, 569 F.2d 1386, 1391 (5th Cir.) ("no difference between allowing a jury to take a written confession into the jury room with them. . . and allowing the jury to replay a tape that was already in evidence and which they had already heard"), cert. denied, 437 U.S. 907 (1978)

    C.    Foreign Language Tapes

An English translation of a tape recording containing conversation in a foreign language may be offered to assist the jury. Cruz, 765 F. 2d at 1022-24. The tape should be played so the jurors may hear voice and other characteristics. Id. A qualified witness must authenticate and verify the translation. Sutherland, 656 F. 2d at 1201; Llinas, 603 F.2d at 509-10.

    D.    Mid-Trial Instruction

The government's proposed mid-trial instruction regarding use of tapes and transcripts is attached.

III. PRIVILEGE NOT TO DISCLOSE SENSITIVE INVESTIGATIVE TECHNIQUES

A qualified government privilege has emerged against compelled government disclosure of sensitive investigative techniques. In United States v. Van Horn, 789 F.2d 1492 (11th Cir.), cert. denied, 479 U.S. 854 (1986), the Court recognized a privilege to protect the nature and location of electronic surveillance equipment. The Court stated:

    Disclosing the precise locations where surveillance devices

> are hidden or their precise specifications will educate
> criminals regarding how to protect themselves against police
> surveillance.  Electronic surveillance is an important tool of
> law enforcement, and its effectiveness should not be
> unnecessarily compromised.  Disclosure of such information
> will also educate persons on how to employ such techniques
> themselves, in violation of Title III.

Id. at 1508.  The Court qualified the privilege "if the defendant can show need for the information . . . and the necessity determination requires a case by case balancing process."  Id.; see also United States v. Cintolo, 818 F.2d 980, 1002-03 (1st Cir.), cert. denied, 484 U.S. 913 (1987).

        Respectfully submitted,

        JAMES R. KLINDT
        Acting United States Attorney


By:    */s/ D. J. PASHAYAN*
        D. J. PASHAYAN
        Assistant United States Attorney
        USAO Number 086
        300 North Hogan Street, Suite 700
        Jacksonville, Florida 32202-4270
        Telephone:  (904) 301-6300
        Facsimile:  (904) 301-6310
        Email:    don.pashayan@usdoj.gov

U.S. v. TONY HENDERSON                                    Case No. 3:06-cr-211(S1)-J-32HTS

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark Rosenblum, Esq.

I hereby certify that on June 19, 2007, a true and correct copy of the foregoing document and the notice of electronic filing was sent by U.S. Mail to the following non-CM/ECF participant(s):

n/a

*s/ D. J. PASHAYAN*
D. J. PASHAYAN
Assistant United States Attorney
USA No. 086
300 North Hogan Street, Suite 700
Jacksonville, Florida  32202-4270
Telephone:   (904) 301-6300
Facsimile:    (904) 301-6310
E-mail:         don.pashayan@usdoj.gov

Government's Requested Mid-Trial Instruction No. ____

## EXPLANATORY INSTRUCTION
## TRANSCRIPTS OF TAPE RECORDED CONVERSATIONS

Members of the Jury:

As you have heard, Exhibit _____ have been identified as typewritten transcripts of oral conversations which can be heard on the tape recordings received in evidence as Exhibit __.

I have admitted the transcripts for the limited and secondary purpose of aiding you in following the content of the conversations as you listen to the tape recordings, [particularly those portions spoken in Spanish,] [and also to aid you in identifying the speakers.]

However, you are specifically instructed that whether the transcripts correctly or incorrectly reflect the content of the conversations [or the identity of the speakers] is entirely for you to determine based upon [your own evaluation of the testimony you have heard concerning the preparation of the transcript and from] your own examination of the transcripts in relation to your hearing of the tape recordings themselves as the primary evidence of its own contents; and, if you should determine that the transcripts are in any respect incorrect or unreliable, you should disregard it to that extent.

You are further advised that certain portions of the tape recordings and corresponding portions of the transcripts have been deleted as irrelevant to the issues in this case, and you should draw no conclusions from any such deletions.