UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:06-cr-211(S1)-J-32HTS

TONY HENDERSON

**UNITED STATES' RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OFFERED UNDER
FEDERAL RULE OF EVIDENCE 801(d)(2)(E)**

The United States of America, by James R. Klindt, Acting United States Attorney for the Middle District of Florida, respectfully submits this response in opposition to the defendant's Motion to Exclude Evidence Offered Under Fed. R. Evid. 801(d)(2)(E). Doc. # 76. For the reasons set forth below, the Court should deny the motion.

**I. Overview [1]**

Pedro Fernandez de Campa (Fernandez) is an illegal alien from Mexico who has resided in Florida since the 1980's and has presented himself on occasion to be a United States citizen in order to avoid deportation. In the mid-1990's, Fernandez met and subsequently befriended the defendant, whom Fernandez knew to be a United States Border Patrol agent. In or about 1996, the Suwanee County (Florida) Sheriff's Office (SCSO) arrested Fernandez for driving while intoxicated and contacted the defendant to inquire into Fernandez's immigration status. After failing to run any routine immigration checks to confirm Fernandez's immigration status, the defendant advised the SCSO that Fernandez was a United States citizen.

---

[1] In the overview, the United States seeks to provide the Court with a summary of some of the anticipated evidence at trial.

Over the years, Fernandez and the defendant maintained contact with one another. In or about the summer of 2003, the defendant paid some tradesmen to work on the roof of his residence in Baker County, Florida. These tradesmen did not perform a satisfactory job. The defendant then asked Fernandez if Fernandez and some of Fernandez's acquaintances would complete the defendant's roofing job. After Fernandez and his acquaintances completed this job, the defendant advised Fernandez, in substance, that the defendant could not pursue legal action against the tradesmen for their incomplete work because the defendant distributed marihuana to one of the tradesmen and feared that this would be disclosed.[2] The defendant then asked Fernandez if Fernandez knew any individuals who wanted to obtain marihuana and provided Fernandez with some samples of the marihuana that the defendant had available for distribution.

In or about the summer 2004, Fernandez spoke with, among other people, a confidential information (CI) about purchasing some of the defendant's marihuana.[3] Fernandez also advised the CI that the defendant was a law enforcement officer. The CI relayed this information to Live Oak (Florida) Police Department Detective A.P. Land, who initiated an investigation of the defendant. As part of this investigation, the CI advised Fernandez that the CI wanted to purchase marihuana for a customer of the CI.[4]

---

[2] Specifically, the defendant "fronted" marihuana to one of the trademen, which means that the defendant provided the marihuana to the tradesman on consignment and expected to be paid after the tradesman sold the marihuana. This tradesman, however, did not pay the defendant back for the marihuana.

[3] Fernandez did not know that the CI was cooperating with law enforcement.

[4] The CI's customer was going to be an undercover police officer.

The CI then engaged in eight (8) consensual recorded conversations with Fernandez and/or the defendant, four (4) of which the United States intends to offer into evidence at trial. During these conversations, the defendant, Fernandez, and the CI utilized the code word "goats" to refer to marihuana. The following is a summary of all the recorded conversations:

    A.    on November 23, 2004, Fernandez advised the CI, in substance, of Fernandez's efforts to contact the defendant about obtaining marihuana from the defendant for the CI;[5]

    B.    on December 6, 2005, Fernandez discussed the quantity of marihuana that the defendant had available to distribute and inquired about the CI's prospective marihuana customer;[6]

    C.    on the morning of on December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. During an earlier part of this conversation, Fernandez advised the CI about the defendant's marihuana transaction with the tradesmen and the samples of the marihuana that the defendant previously provided to Fernandez, which are described above. Fernandez also advised the CI that the

---

[5] After this controlled telephone call was placed, Fernandez and the CI traveled to the defendant's residence in Baker County in an effort to meet with the defendant about obtaining marihuana. Although the United States intends to offer testimony at trial relative to this incident, the United States does not intend to introduce this recording at trial.

[6] At this time, the United States does not intend to introduce this rather lengthy recording at trial.

3

defendant spoke with another individual known to Fernandez and the CI about purchasing marihuana but that the defendant only wanted to distribute marihuana by utilizing Fernandez as a broker. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant used to have forty pounds of marihuana available for distribution but that the defendant needed to find more marihuana from another source of supply. After Fernandez spoke with the defendant, Fernandez and the CI discussed their November 23, 2004 trip to the defendant's residence when they attempted to obtain marihuana from the defendant;[7]

D. in the early afternoon of December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant obtained four pounds of marihuana and inquired as to how much Fernandez and the CI would pay for the marihuana. After Fernandez spoke with the defendant, Fernandez

---

[7] Although the United States intends to introduce this recording at trial, it should be noted that during this rather lengthy recording that Fernandez discusses other matters, including other drug activities, with the CI which are not directly related to the defendant's case. While the United States is considering publishing only the pertinent portions of this recording in order to expedite its case in chief, the United States is concerned that by doing so the defendant may try argue or infer to the jury that the United States did something inappropriate by failing to publish the entire recording.

and the CI discussed their plans to travel to the defendant's residence later that day;[8]

E. in the late afternoon of December 10, 2005, the CI and Fernandez discussed, among other things, the prospective purchase of marihuana from the defendant as they traveled to the defendant's residence;[9]

F. on December 11, 2006, the CI and Fernandez discussed, among other things, the poor quality of the marihuana that the defendant sold to Fernandez;[10]

G. On January 12, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant; and

H. On January 23, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant.

As mentioned above, the CI and Fernandez traveled to the defendant's residence on December 10, 2005. Upon arriving at the defendant's residence, Fernandez exited the CI's vehicle, made contact with the defendant, and purchased

---

[8] Please see Footnote 4.

[9] The United States does not intend to introduce this recording into evidence at trial.

[10] The United States does not intend to introduce this recording into evidence at trial.

marihuana from the defendant. After obtaining this marihuana from the defendant, Fernandez re-entered the CI's vehicle and departed from the residence. The CI later provided this marihuana to law enforcement agents.

On June 6, 2006, Drug Enforcement Administration (DEA) and other agents arrested the defendant. After being advised of and waiving his Miranda rights, the defendant advised agents, in substance, of the following:

> A. that the defendant knew Fernandez and considered him to be an "acquaintance" and not a friend;
>
> B. that Fernandez and some other individuals performed work on the defendant's roof;
>
> C. that law enforcement contacted the defendant about determining Fernandez's immigration status when Fernandez was arrested for a local crime;
>
> D. that the defendant did not run any queries to determine Fernandez's immigrations status;
>
> E. that the defendant advised law enforcement that Fernandez was a United States' citizen;
>
> F. that the defendant agreed to cooperate with law enforcement in this investigation and was concerned about his retirement.[11]

---

[11] These statements are embodied in a report written by Drug Enforcement Administration (DEA) Special Agent Tino Rosales, which was provided to the defendant in a discovery letter dated July 25, 2006.

## III. Memorandum

**A.     The defendant's arguments**

In his motion, the defendant seeks to exclude the statements made by Fernandez, who is a co-conspirator of the defendant, to the CI. In support of this motion, the defendant is apparently asking the Court to find that these statements are not Federal Rule of Evidence 801(d)(2)(E) co-conspirator statements because: (1) no co-conspirators are named in the indictment;[12] (2) Fernandez was the CI's agent and not the defendant's agent;[13] and (3) the evidence at trial would only establish a "buyer-seller" relationship between Fernandez and the defendant and not a conspiracy to distribute marihuana.[14] Because Fernandez was a co-conspirator of the defendant, Fernandez's statements to the CI during the course of and in furtherance of this conspiracy are admissible under Fed. R. Evid. 801(d)(2)(E).

---

[12]  There is no legal authority cited in support of the significance of this proposition.

[13]  There is no legal authority cited in support of this proposition.

[14]  The defendant's argument that the evidence at trial would only establish a "buyer-seller" relationship between Fernandez and the defendant, in essence, a challenge to the sufficiency of the evidence. Eleventh Circuit law is clear that such factual questions are to be determined at trial and not in pretrial challenges. As the Eleventh Circuit held in United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (citations omitted), "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence.... The indictment is sufficient if it charges in the language of the statute." See also United States v. Critzer, 951 F.2d 206, 307 (11th Cir. 1992) (accord); United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987) (accord). Instead, a "motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases. . . ." Salman, 378 F.3d at 1268.

## B. Fernandez's statements are admissible Fed. R. Evid. 802(d)(2)(E) co-conspirator statements.

Fernandez's statements to the CI are admissible as Fed. R. Evid. 802(d)(2)(E) co-conspirator statements. In order to introduce statements of a co-conspirator under Rule 802(d)(2)(E), the United States must prove by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Underwood, 446 F.3d 1340, 1345-46 (11th Cir. 2006) citing Bourjaily v. United States, 483 U.S. 171, 175 (1987). Moreover, the Eleventh Circuit Court of Appeals applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy. United States v. James, 510, F.2d 546, 549 (5th Cir. 1979).

Here, Fernandez's statements to the CI, including those in the recorded conversations described above, are all admissible co-conspirator statements. For one, the evidence described above tends to establish that Fernandez agreed to help the defendant distribute marihuana to others, that is, Fernandez conspired to distribute marihuana with the defendant. Both the defendant's and Fernandez's statements to one another and to the CI place the defendant and Fernandez in the same conspiracy. Moreover, Fernandez's statements were made to the CI during the time period of the conspiracy and described, among other things, Fernandez's ability to obtain marihuana from and past marihuana related dealings with the defendant.

**C.      No pretrial hearing is needed to determine the admissibility of these statements.**

In United States v. James, 590 F.2d 575, 580-81 (5th Cir. 1979), the Fifth Circuit Court of Appeals established the preferred order of proof concerning the admission of co-conspirator statements. Id.  Under the James standards, the preferred order of proof was for the government to establish the conspiracy and the connection of the defendant and declarant with it prior to offering the statements as evidence. Id. at 581-82.  This statement led many trial judges to conduct a James hearing outside the presence of the jury to develop the conspiracy evidence before admitting any coconspirators' statements. United States v. Lippner, 676 F.2d 456, 464 (11th Cir. 1982).  For the following reasons, such a hearing is not needed in this case.

      **1.      The James issue can be decided after the government introduces the co-conspirator statements into evidence.**

There is no error when a court decides the James issue after the government introduces the coconspirator statements into evidence. United States v. Sanchez, 722 F. 2d 1501, 1507 (11th Cir. 1984).[15]  A court can admit the statement subject to the government's "connecting them up" with enough evidence by the end of trial. United States v. Roe, 670 F.2d 956, 962-63 (11th Cir. 1982) citing James, 590 F. 2d at 582. Moreover, Fed. R. Evid. 104(a) permits district courts to consider coconspirator statements sought to be admitted under Rule 801(d)(2)(E) in determining whether a conspiracy existed, whether the defendant and the declarant were members of the

---

[15] The undersigned has observed that the practice of this Court is to allow the United States to present the co-conspirator statements into evidence first and then "connect" up the statements with additional evidence of the conspiracy later.

9

conspiracy, and whether the statements were made in the course of and in furtherance of the conspiracy. United States v. Chestang, 849 F. 2d 528, 531 (11th Cir. 1988) citing Bourjaily, 483 U.S. 171.[16]

Here, the United States intends to present Fernandez's coconspirator statements early in trial to help explain why the defendant chose to conspire with Fernandez to distribute marihuana. Afterwards, the United States intends to "connect up" these statements in an orderly and logical fashion with other evidence, which would include, among other things, the CI's testimony relative to the December 10, 2005 controlled purchase, the CI's subsequent telephone conversations with the defendant on January 12, 2006 and January 23, 2006, and the defendant's post-arrest statements.

### 2. A separate hearing is not required.

While a James hearing was designed to avoid a possible waste of judicial resources, a hearing is not required nor mandated in all cases. In. Lippner, the Eleventh Circuit found:

> [h]ere the only charge before the Court was the conspiracy charge, and the key witness was Tedder. As the trial court noted, under the circumstances a James hearing would in essence have required trying the case twice to show the admissibility of Tedder's statements, and would itself have wasted the judicial resources James was designed to conserve.

Id. See also United States v. Marquardt, 696 F. 2d 1300, 1304 (11th Cir. 1983)(trial court was well within its discretion in refusing to hold a James hearing which would have been duplicative of the trial itself and would have wasted the judicial resources James was

---

[16] The Court is not bound by the Rules of Evidence with respect to determining the admissibility of Evidence. Fed. R. Evid. 104(a).

designed to conserve); Sanchez, 722 F. 2d at 1507 citing Roe, 670 F.2d at 962 .[17] [18]

Here, a James hearing is not needed because Fernandez's statements alone are evidence of the conspiracy charged and presenting this evidence to the Court prior to trial would require the Court to hear the same evidence twice.

### III. Conclusion

For the reasons set forth above, the Court should enter an order denying the defendant's motion. The United States further respectfully suggests that no testimony on the motion is needed.

      Respectfully submitted,

      JAMES R. KLINDT
      United States Attorney


By:   *s/ D. J. Pashayan*
      D. J. PASHAYAN
      Assistant United States Attorney
      USAO No. 086
      300 North Hogan Street, Suite 700
      Jacksonville, Florida 32202-4270
      Telephone: (904) 301-6300
      Facsimile: (904) 301-6310
      E-mail: don.pashayan@usdoj.gov

---

[17] The failure to hold a James hearing is not reversible error. Roe, 670 F. 2d at 962; see also United States v. Faccianno, 747 F. 2d 632, 653 (11th Cir. 1984)

[18] A court is not required to find that a James hearing would be impractical before deciding to forego it. Id. citing Marquardt, 695 F. 2d at 1304.

U.S. v. Tony Henderson								Case No. 3:06-cr-211(S1)-J-32HTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Mark Rosenblum, Esq.

I hereby certify that on September 4, 2007, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participant(s):

    None.

    *s/ D. J. Pashayan*
    D. J. PASHAYAN
    Assistant United States Attorney