UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

CASE NO. 3:06-cr-211(S1)-J-32HTS

v.

TONY HENDERSON

**UNITED STATES' RESPONSE IN OPPOSITION TO THE
DEFENDANT'S MOTION TO EXCLUDE EVIDENCE
OFFERED UNDER FEDERAL RULE OF EVIDENCE 402, 403 and 404(b)**

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this response in opposition to the defendant's motion to exclude evidence offered under Federal Rule of Evidence 402, 403, and 404(b). Doc. # 77. For the following reasons, the motion should be denied.

### I. Overview [1]

Pedro Fernandez de Campa (Fernandez) is an illegal alien from Mexico who has resided in Florida since the 1980's and has presented himself on occasion to be a United States citizen in order to avoid deportation. In the mid-1990's, Fernandez met and subsequently befriended the defendant, whom Fernandez knew to be a United States Border Patrol agent. In or about 1996, the Suwanee County (Florida) Sheriff's Office (SCSO) arrested Fernandez for driving while intoxicated and contacted the defendant to inquire into Fernandez's immigration status. After failing to run any routine immigration checks to confirm Fernandez's immigration status, the defendant advised

---

[1] This overview is similar, but not identical to the overview contained in the United States' response in opposition to the defendant's Motion to Exclude Evidence Offered Under Fed. R. Evid. 801(d)(2)(E).

the SCSO that Fernandez was a United States citizen.

Over the years, Fernandez and the defendant maintained contact with one another. In or about the summer of 2003, the defendant paid some tradesmen to work on the roof of his residence in Baker County, Florida. These tradesmen did not perform a satisfactory job. The defendant then asked Fernandez if Fernandez and some of Fernandez's acquaintances would complete the defendant's roofing job. After Fernandez and his acquaintances completed this job, the defendant advised Fernandez, in substance, that the defendant could not pursue legal action against the tradesmen for their incomplete work because the defendant distributed marihuana to one of the tradesmen and feared that this would be disclosed.[2] [3] The defendant then asked Fernandez if Fernandez knew any individuals who wanted to obtain marihuana and provided Fernandez with some samples of the marihuana that the defendant had available for distribution.

In or about the summer 2004, Fernandez spoke with, among other people, a confidential information (CI) about purchasing some of the defendant's marihuana.[4] Fernandez also advised the CI that the defendant was a law enforcement officer. The CI relayed this information to Live Oak (Florida) Police Department Detective A.P. Land,

---

[2] Specifically, the defendant "fronted" marihuana to one of the trademen, which means that the defendant provided the marihuana to the tradesman on consignment and expected to be paid after the tradesman sold the marihuana. This tradesman, however, did not pay the defendant back for the marihuana.

[3] As discussed below, the United States believes that the defendant also used coded language when talking about marihuana with the tradesmen.

[4] Fernandez did not know that the CI was cooperating with law enforcement.

2

who initiated an investigation of the defendant. As part of this investigation, the CI advised Fernandez that the CI wanted to purchase marihuana for a customer of the CI.[5] The CI then engaged in eight (8) consensual recorded conversations with Fernandez and/or the defendant, four (4) of which the United States intends to offer into evidence at trial. During these conversations, the defendant, Fernandez, and the CI utilized the code word "goats" to refer to marihuana. The following is a summary of those four the recorded conversations:

    A.    on the morning of on December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. During an earlier part of this conversation, Fernandez advised the CI about the defendant's marihuana transaction with the tradesmen and the samples of the marihuana that the defendant previously provided to Fernandez, which are described above. Fernandez also advised the CI that the defendant spoke with another individual known to Fernandez and the CI about purchasing marihuana but that the defendant only wanted to distribute marihuana by utilizing Fernandez as a broker. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant used to have forty pounds of marihuana available for distribution but that the defendant needed to find more marihuana from another source

---

[5] The CI's customer was going to be an undercover police officer.

3

of supply. After Fernandez spoke with the defendant, Fernandez and the CI discussed their November 23, 2004 trip to the defendant's residence when they attempted to obtain marihuana from the defendant;

B. in the early afternoon of December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant obtained four pounds of marihuana and inquired as to how much Fernandez and the CI would pay for the marihuana. After Fernandez spoke with the defendant, Fernandez and the CI discussed their plans to travel to the defendant's residence later that day;

C. On January 12, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant; and

D. On January 23, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant.

As mentioned above, the CI and Fernandez traveled to the defendant's residence on December 10, 2005. Upon arriving at the defendant's residence, Fernandez exited the CI's vehicle, made contact with the defendant, and purchased marihuana from the defendant. After obtaining this marihuana from the defendant,

4

Fernandez re-entered the CI's vehicle and departed from the residence. The CI later provided this marihuana to law enforcement agents.

On June 6, 2006, Drug Enforcement Administration (DEA) and other agents arrested the defendant. After being advised of and waiving his Miranda rights, the defendant advised agents, in substance, of the following:[6]

    A.    that the defendant knew Fernandez and considered him to be an "acquaintance" and not a friend;

    B.    that Fernandez and some other individuals performed work on the defendant's roof;

    C.    that law enforcement contacted the defendant about determining Fernandez's immigration status when Fernandez was arrested for a local crime;

    D.    that the defendant did not run any queries to determine Fernandez's immigrations status;

    E.    that the defendant advised law enforcement that Fernandez was a United States' citizen;

    F.    that the defendant agreed to cooperate with law enforcement in this investigation and was concerned about his retirement.

On August 22, 2007, the defendant provided the United States with its first discovery letter, in which the defendant advised that it may seek to introduce evidence

---

[6] These statements are embodied in a report written by Drug Enforcement Administration (DEA) Special Agent Tino Rosales, which was provided to the defendant in a discovery letter dated July 25, 2006.

that the defendant was involved with the cigar business. Specifically, some of these materials identified a brand of cigars that had a "goat" on its logo.

### III. Memorandum

**A.     The defendant's arguments**

In his motion, the defendant seeks to exclude evidence of the facts and circumstances related to the defendant's relationship with Fernandez and the defendant's distribution of marihuana to the tradesmen in 2003. In support of this motion, the defendant argues that: (1) the 2003 distribution occurred outside of the time period charged; and (2) Fernandez's status as an illegal alien has nothing to do with the crime charged. Because this evidence will help explain the reason why the defendant chose to conspire with Fernandez to distribute marihuana, the Court should deny the defendant's motion.

**B.     The evidence is inextricably intertwined with the crimes charged.**

"Evidence of criminal activity other than the charged offense is not extrinsic within the meaning of Rule 404(b) if it is an uncharged offense that arose out of the same transaction or series of transactions as the charged offense." United States v. Muscatell, 42 F.3d 627, 630 (11th Cir.), cert. denied, 115 5. Ct. 2617 (1995). Evidence of uncharged acts which relate closely in time, manner and character is "inextricably intertwined" with the charged conduct. See United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990); United States v. Chaverra-Cardona, 879 F.2d 1551, 1553-1555 (7th Cir. 1989); United States v. Hawkins, 823 F.2d 1020, 1023 (7th Cir. 1987); United States v. McDowell, 705 F.2d 426 (11th Cir. 1983).

6

In United States v. Potts, 173 F.3d 430,*10 (6th Cir. 1999), the Sixth Circuit Court of Appeals found that the admission of evidence describing marihuana transactions between the defendant and a witness was inextricably intertwined with and helped prove the defendant's charge for conspiracy to distribute cocaine. Id. at *10.  With respect to this finding, the Sixth Circuit noted:

> [a] district court should admit evidence regarding drug transactions for which a defendant has not been indicted when proof regarding the transactions is "so blended or connected. . . [with the indicted charge] that proof of one incidentally involves the other [] or explains the circumstances or tends to logically prove an element of the crime charged. . . . Additionally, this Court admits evidence regarding a defendant's unindicted drug activities, when the evidence assists in the "telling of the [drug conspiracy] story." (citations omitted).  Appellate courts in other circuits similarly allow admission of evidence relating to unindicted drug transactions when as intrinsic evidence when other transactions provided the *res gestae* for the events charged in the defendant's indictment.

Id. at *9 -*10. (emphasis added).[7]

Here, evidence related to the defendant's distribution of marihuana in 2003 is inextricably intertwined with the present case and will help to explain his drug conspiracy "story."  As mentioned above, the defendant is a Border Patrol agent and it unfortunately defies logic why he would conspire to distribute marihuana with an illegal alien.  Evidence, however, of the defendant's marihuana distribution in 2003 will help

---

[7] See also United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if . . . [it] forms an integral and natural part of an account of the crime, or is necessary to complete, the story of the crime for the jury); United States v. Raygoza, 29 F.3d 637, *1 (9th Cir. 1994) ("Dominguez's cocaine negotiation testimony was "inextricably intertwined" with his testimony concerning the marihuana-smuggling operation [because it was not] a remote instance of Raygoza dealing cocaine, but rather to a contemporaneous drug transaction Raygoza was attempting to arrange with an individual he believed to be a close friend of [Raygoza's co-defendant].")

7

explain why he ultimately chose to conspire with Fernandez in the present case. Specifically, the tradesman's failure to pay the defendant for the marihuana sold in 2003 caused the defendant to instead solicit Fernandez to obtain cash customers for the marihuana in the present case. As part of the defendant's solicitation, the defendant explained the details of the 2003 transaction to Fernandez and provided Fernandez with samples of the marihuana that the defendant had for sale. These actions, in turn, caused Fernandez to seek out prospective customers, including the CI, for the defendant. As part of Fernandez's ensuing discussions with the CI, Fernandez told the CI about the defendant's employment as a law enforcement officer, the defendant's distribution of marihuana to the tradesman, and the marihuana samples that Fernandez previously obtained from the defendant as part of Fernandez's assurances to the CI that the defendant had and would distribute marihuana.[8]

Moreover, the defendant's decision while employed as a Border Patrol agent to seek out Fernandez, an illegal alien, to distribute marihuana is inextricably intertwined with the defendant's drug story. As mentioned above, when the tradesman failed to pay the defendant for the marihuana in 2003, the defendant had no recourse against the tradesman for fear that the one of the tradesmen would report the defendant's illegal activities to law enforcement. As a result, the defendant asked Fernandez to act as a marihuana broker. By doing so, the defendant insulated himself from law enforcement detection by inserting another individual between the defendant and a prospective marihuana customer. Because Fernandez was an illegal alien, Fernandez would not

---

[8] Fernandez's discussions about the defendant's 2003 marihuana transaction and the marihuana samples are embedded in the recordings described above.

8

likely report the defendant for fear of deportation and would likely have credibility issues in the event that Fernandez chose to report the defendant to law enforcement. As a result, evidence of the defendant's distribution of marihuana in 2003 and relationship with Fernandez are inextricably intertwined with the present case and help complete the telling of the defendant's drug conspiracy story.

**C.      The evidence is also admissible under Fed. R. Evid. 404(b).**

Assuming *arguendo* that the evidence is not inextricably intertwined, it is nonetheless admissible pursuant to Federal Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

In determining whether to admit evidence of such "other acts," the Eleventh Circuit uses a three-point balancing test which has been described in United States v. Calderon, 127 F. 3d 1314 (11th Cir. 1997). In Calderon, the Eleventh Circuit stated that:

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, the evidence must be sufficient to support a finding that the defendant actually committed the extrinsic act. Third, the probative value of the must not be substantially outweighed by unfair prejudice (emphasis added).

Id. at 1331, citing United States v. Beechum, 582 F. 2d 898 (5th Cir. 1978); also citing

United States v. Diaz-Lizaraza, 981 F. 2d 1216, 1224 (11th Cir. 1993).[9] In the present case, evidence of the defendant's distribution of marihuana in 2003 and the facts and circumstances surrounding his relationship with Fernandez should be admitted because they clearly passes all three prongs delineated in Calderon.

>    **1.    The facts and circumstances surrounding the defendant's 2003 marihuana transaction and relationship with Fernandez involve matters unrelated to the defendant's character.**

The Court should admit evidence of the defendant's 2003 marihuana transaction and relationship with Fernandez because they help to properly establish:

>    a. that the defendant <u>intended</u> to distribute and conspired to distribute marihuana;

>    b. that the defendant <u>knew</u> that Fernandez was attempting to obtain marihuana for the CI, who was a prospective customer;

>    c. that the defendant is <u>not</u> the <u>innocent victim</u> of a law enforcement <u>mistake</u> in identifying the defendant as a marihuana trafficker or that the defendant did not mistakenly distribute marihuana to Fernandez; and

>    d. that the defendant used code when distributing marihuana as part of a common plan or scheme.

As discussed below, courts that have dealt with the issue of whether to admit evidence of other drug-related dealings have done so for all of the reasons stated above. Since, however, Rule 404(b) evidence can be admitted for more than one purpose, it is not important to specifically label this evidence as, for example, indicative of motive vice intent, when more than one label could properly apply. See United States v. Russell,

---

[9] Any alleged unfair prejudice may be mitigated by a limiting instruction. See Beechum, 582 F. 2d at 907 n.23; see also Calderon, 127 F. 2d at 1333. Moreover, a defendant who takes the stand waives his Fifth Amendment right against self-incrimination and should not be permitted to invoke the Fifth Amendment to avoid responding to questions raised by Rule 404(b) evidence. Id. at 908.

109 F. 3d 1503, n.4 (10th Cir. 1997).

### a. **The defendant intended to distribute and conspired to distribute marihuana.**

A critical issue at trial will be whether the defendant intended to distribute and conspired to distribute marihuana. See Eleventh Circuit Pattern Jury Instruction 85, 87.[10] Evidence of this 2003 marihuana distribution and the facts and circumstances surrounding his relationship with Fernandez will help establish that the defendant intended to distribute marihuana in the present case with Fernandez. See, e.g., United States v. Dorsey, 819 F.2d 1055 (11th Cir. 1987)(admission of extrinsic evidence of defendant's prior and subsequent involvement in drug smuggling and distribution in prosecution for conspiracy to import marihuana and possession with the intent to distribute marihuana was not an abuse of discretion where extrinsic act evidence exhibited willingness on the part of the defendant to import and distribute marihuana, extrinsic acts were similar in nature and time to crimes charged, and government's evidence at trial was not so overwhelming as to render the extrinsic evidence cumulative). Without this Rule 404(b) evidence, the defendant may very well argue that the recorded conversations were not about marihuana or that the defendant did not meet with Fernandez on the night of December 10, 2005 for the purpose of distributing

---

[10] As mentioned above, the defendant provided the United States with discovery that the defendant was in the business of selling cigars. Also, as mentioned in the defendant's motion to exclude evidence of co-conspirator statements, the defendant stated that Fernandez was the only direct witness to the alleged marihuana transaction with the defendant. See Doc. # 76. As such, it is foreseeable that the defendant may try to argue, among other things, that the recorded conversations were not about marihuana, that Fernandez did not obtain marihuana from the defendant, and/or that the defendant mistakenly provided marihuana to the defendant.

marihuana.

### b. The defendant knew that Fernandez wanted to obtain marihuana for the CI.

Evidence of this 2003 marihuana distribution and the facts and circumstances surrounding the defendant's relationship with Fernandez will help establish that the defendant knew that Fernandez was attempting to obtain marihuana for the CI, a prospective customer. Courts have admitted Rule 404(b) evidence to help show a defendant's knowledge of the illegal activity charged. See, e.g., United States v. Rodriguez, 215 F.3d 110 (1st Cir. 2000)(evidence of the defendant's prior marihuana importation activities in the late 1970's did not generate unfair prejudice that outweighed its probative worth in showing defendant's knowledge of and voluntary participation in conspiracy to import marihuana in 1993 on the grounds that the prior incidents were too remote, where there was a striking similarity between the prior acts and the crimes charged). Because the Court will likely instruct the jury that it will have to make a determination whether the defendant "*knowingly* and willfully distributed marihuana, as charged," evidence of the defendant's 2003 marihuana distribution and the facts and circumstances surrounding the defendant's relationship with Fernandez are admissible as evidence that the defendant knew that Fernandez wanted to obtain marihuana for the CI.[11]

---

[11] See Eleventh Circuit Pattern Jury Instruction 85, 87.

### c. The defendant is neither the innocent victim of a mistaken law enforcement investigation nor distributed marihuana to Fernandez by mistake.

Evidence of the defendant's 2003 marihuana distribution would also demonstrate that the defendant is neither the innocent victim of a mistaken law enforcement investigation that identified him as a marihuana trafficker nor distributed marihuana to Fernandez by mistake. In similar situations, courts have admitted Rule 404(b) evidence to help show that a defendant was not charged for conduct imputed upon that defendant by some accident or mistake.

In <u>United States v. Cooper,</u> 125 F.3d 849 (4th Cir. 1997), the defendant claimed ignorance of crack cocaine that was found in a secret compartment of the car that he was driving. <u>Id.</u> The Fourth Circuit Court of Appeals held that a defendant's prior conviction for possession with the intent to distribute crack cocaine, which involved the hiding of the crack cocaine in an automobile, was relevant to issues of intent, knowledge and absence of mistake in that defendant's current case. <u>Id.</u> In reaching this decision, the Fourth Circuit found that: "[t]he prior incidents of drug transactions, especially the conviction which involved hiding the drugs in an internal compartment of a car, made it more likely than not that Cooper was not the innocent victim of mistake, but rather that he was aware of the contents of the side panel." <u>Id.</u>

Similarly, in <u>United States v. Conway,</u> 73 F.3d 975 (10th Cir. 1995), the defendant was arrested in a hotel room after police found crack cocaine on a dresser, which the defendant claimed did not belong to him. <u>Id.</u> at 978. The Tenth Circuit Court of Appeals held that Rule 404(b) evidence of three prior arrests, all of which involved selling crack cocaine from hotel rooms in that area, was admissible to demonstrate, in

part, absence of mistake or accident. Id. at 981. See also United States v. Claybourne, 415 F.3d 790, 797 (8th Cir. 2005)(the United States was permitted to rebut the defendant's theory that he was an "innocent victim" of drug conduct committed by another person with Rule 404(b) evidence); United States v. Myers, 102 F.3d 227, 233 (6th Cir. 1996)(Rule 404(b) evidence was highly probative because it helped to rebut the defendant's "innocent victim" claim and corroborated the testimony of other trial witnesses.) Here, evidence of the defendant's 2003 marihuana distribution will help demonstrate that the defendant is neither the innocent victim of a mistake made by law enforcement in identifying the defendant as a marihuana trafficker nor that the defendant distributed marihuana to Fernandez by mistake.

        **d.    The defendant utilized code to discuss marihuana as part of a common plan or scheme.**

Evidence of the defendant's 2003 marihuana distribution would also help establish that the defendant utilized coded language as part of a common plan or scheme to distribute marihuana. Courts have recognized that other acts of concealment are admissible as evidence of a defendant's common plan or scheme. See, e.g., United States v. Montoya, 891 F.2d 1273, 1285 (7th Cir. 1989)(Rule 404(b) evidence of the defendant's other acts of concealing contraband is probative of the defendant's *modus operandi*.) Here, the United States anticipates that the evidence will show that the defendant referred to marihuana as "engines" in 2003 and "goats" in 2005 in an effort to avoid detection by law enforcement. Without this Rule 404(b) evidence, the defendant could argue that "goats" referred to something other than marihuana. As a result, this evidence should be admitted to help establish that the defendant utilized

14

coded language when distributing marihuana as part of a common plan or scheme.

    **2.    <u>The evidence that the defendant committed these other acts is sufficient.</u>**

In determining whether to admit evidence of other acts, a trial judge must look to Rule 104(b). <u>Beechum,</u> 582 F. 2d at 913. The Court in <u>Beechum</u> stated that: "the preliminary fact can be decided by the judge against the proponent <u>only</u> where the jury could not reasonably find the preliminary fact to exist." <u>Id.</u> Here, the evidence that the defendant committed these others acts is very strong because it is, among other things, corroborated by, among other things, the anticipated testimony of Fernandez, the CI, and the tradesmen as well as and the different recorded conversations described above.

    **3.    <u>The probative value of the defendant's other acts is not substantially outweighed by its prejudicial effect.</u>**

The probative value of the defendant's other drug distribution activities is <u>not</u> substantially outweighed by its prejudicial effect. <u>Calderon,</u> 127 F. 3d at 1332 (citations omitted).[12] Such determination calls for " a common sense assessment of all the circumstances surrounding the extrinsic act," including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness. <u>Id.</u>

    Here, the probative value of the other acts is <u>not</u> substantially outweighed by its

---

[12] In <u>Delgado,</u> the Eleventh Circuit held that extrinsic drug offenses do not tend to incite a jury to an irrational decision. <u>Delgado,</u> 56 F. 3d at 1366, <u>citing</u> <u>United States v. Hicks,</u> 798 F. 2d 446, 454 (11th Cir. 1986).

15

prejudicial effects.[13]  For one, these others acts occurred very close in time to the present case, that is, less than a year-and-a-half from the commencement of the conspiracy charged.  Second, both instances involve the same drug, marihuana, and common participant, Fernandez.  Moreover, the United States needs this evidence to help rebut likely defense theories and avenues, which would, among other things, likely include: (1) attacking the credibility and testimony of cooperating witnesses, including Fernandez and the CI; (2) arguing that the defendant was in the business of selling other items and not marihuana; or (3) attributing the marihuana to someone other than the defendant.  As such, the prejudicial effect of this information is not <u>substantially</u> outweighed by it prejudicial effect.

---

[13]  Any prejudicial effect would be minimized by a proper jury instruction from the Court. See, e.g., United States v. Saucedo-Munoz, 307 F.3d 344, 350 (5th Cir. 2002)(this court has "consistently held that evidence of a conviction for a similar crime is more probative than prejudicial and that any prejudicial effect may be minimized by proper jury instruction.)

WHEREFORE, the United States respectfully requests that the Court enter a pre-trial order allowing the admission of evidence related to the defendant's distribution of marihuana in 2003 and the defendant's relationship with Fernandez. The United States further respectfully suggests that no testimony on the motion is needed.

        Respectfully submitted,

        JAMES R. KLINDT
        Acting United States Attorney

By:   *s/ D. J. Pashayan*
        D. J. PASHAYAN
        Assistant United States Attorney
        USA No. 086
        300 North Hogan Street, Suite 700
        Jacksonville, Florida 32202
        (904) 301-6300

U.S. v. Tony Henderson         Case No. 3:06-cr-211(S1)-J-32HTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Mark Rosenblum, Esq.

I hereby certify that on September 4, 2007, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participant(s):

    None.

          *s/ D. J. Pashayan*
          D. J. PASHAYAN
          Assistant United States Attorney