UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE  DIVISION

UNITED STATES OF AMERICA

CASE NO. 3:06-cr-211(S2)-J-32HTS

v.

TONY HENDERSON

**UNITED STATES' RESPONSE IN OPPOSITION TO THE
DEFENDANT'S MOTION TO DISMISS COUNTS ONE, TWO
AND THREE OF SECOND SUPERSEDING INDICTMENT
BECAUSE OF PRE INDICTMENT DELAY**

The United States of America, by and through the undersigned Assistant United

States Attorney, respectfully submits this response in opposition to the defendant's

Motion to Dismiss Counts One, Two and Three of Second Superseding Indictment

Because of Pre-trial Delay (the "Motion."). Doc. # 104.  For the following reasons, the

Motion should be denied.

## I. Overview of the Investigation

During the summer of 2004, a confidential informant (CI) informed Live Oak

(Florida) Police Department Detective A.P. Land that Pedro Fernandez de Campa

(Fernandez) advised the CI that Fernandez was trying to help a United States Border

Patrol agent, later identified as defendant Tony Henderson, distribute marihuana.[1][2][3]

Under the direction of law enforcement, the CI advised Fernandez that the CI wanted to

obtain some of this marihuana.

As part of this investigation, on November 23, 2004, the CI and Fernandez

traveled to the defendant's residence in Baker County, Florida, for the purpose of

meeting with the defendant and attempting to obtain marihuana from him.  While at the

residence, the defendant's wife advised Fernandez that the defendant was not at home.

Although the CI was not able to then obtain any marihuana, the CI maintained periodic

contact with Fernandez in the hope of obtaining marihuana from the defendant at a later

point in time.[4]

As part of this investigation, the CI again advised Fernandez that the CI wanted

---

[1]  As mentioned in previous pleadings, Fernandez is an illegal alien from Mexico who has resided in Florida since the 1980's and has presented himself on occasion to be a United States citizen in order to avoid deportation.  In the mid-1990's, Fernandez met and subsequently befriended the defendant, whom Fernandez knew to be a United States Border Patrol agent.  In or about 1996, the Suwanee County (Florida) Sheriff's Office (SCSO) arrested Fernandez for driving while intoxicated and contacted the defendant to inquire into Fernandez's immigration status.  After failing to run any routine immigration checks to confirm Fernandez's immigration status, the defendant advised the SCSO that Fernandez was a United States citizen.

[2] Fernandez did not know that the CI was cooperating with law enforcement.

[3]  During this time period, Detective Land was running for sheriff and passed this information onto other investigators.  After the election occurred during the fall of 2004, Detective Land became re-involved with this investigation.

[4]  Although there was some lapse in time between the November 23, 2004 effort to obtain marihuana from the defendant and the December 10, 2005 controlled purchase described below, it should be noted that, among other things, the defendant's investigation was not the only case that agents were responsible for investigating.

to purchase marihuana and explained that the CI had a customer for the marihuana.[5] Beginning in late 2005, the CI engaged in eight (8) consensual recorded conversations, most of which are voluminous and are in Spanish, with Fernandez and/or the defendant relative to obtaining marihuana from the defendant and Fernandez. During these conversations, the defendant, Fernandez, and the CI utilized the code word "goats" to refer to marihuana. The following is a summary of two of those recorded conversations:[6]

A.     on the morning of on December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. During an earlier part of this conversation, Fernandez advised the CI about the defendant's marihuana transaction with the tradesmen mentioned below and the samples of the marihuana that the defendant previously provided to Fernandez. Fernandez also advised the CI that the defendant spoke with another individual known to Fernandez and the CI about purchasing marihuana but that the defendant only wanted to distribute marihuana by utilizing Fernandez as a broker. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant used to have

---

[5] The CI's customer was going to be an undercover police officer.

[6] Subsequent debriefings of Fernandez, especially those undertaken as part of trial preparations, helped to explain the context and content of much of these recorded conversations.

3

forty pounds of marihuana available for distribution but that the defendant needed to find more marihuana from another source of supply. After Fernandez spoke with the defendant, Fernandez and the CI discussed their November 23, 2004 trip to the defendant's residence when they attempted to obtain marihuana from the defendant; and

B.     in the early afternoon of December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant obtained four pounds of marihuana and inquired as to how much Fernandez and the CI would pay for the marihuana. After Fernandez spoke with the defendant, Fernandez and the CI discussed their plans to travel to the defendant's residence later that day.

As mentioned above, the CI and Fernandez traveled to the defendant's residence on December 10, 2005. Upon arriving at the defendant's residence, Fernandez exited the CI's vehicle, made contact with the defendant, and purchased marihuana from the defendant. After obtaining this marihuana from the defendant, Fernandez re-entered the CI's vehicle and departed from the residence. The CI later provided this marihuana to law enforcement agents.

After the CI obtained this marihuana, agents determined it to be of very poor quality. In an effort to make another purchase of marihuana from the defendant, the CI

4

telephonically contacted the defendant directly on January 12, 2006 and January 23, 2006. During these recorded telephone conversations, the CI, in substance, mentioned the poor quality of the marihuana, the fact that Fernandez was out of town, and the CI's desire to obtain marihuana directly from the defendant. The defendant, in turn, advised the CI, in substance, that the CI should deal through Fernandez.[7]

After some months past, the CI was unable to set up another marihuana transaction with the defendant through Fernandez. In early June 2006, the United States filed federal complaints and obtained arrest warrants for both Fernandez and the defendant. At the time that the defendant was arrested on the federal complaint, agents were unaware of the defendant's marihuana related activities with the tradesmen described below.[8]

---

[7] Fernandez would periodically leave northeast Florida to travel out to Mississippi to work on Hurricane Katrina reconstruction.

[8] On June 6, 2006, Drug Enforcement Administration (DEA) and other agents arrested the defendant. After being advised of and waiving his Miranda rights, the defendant advised agents, in substance, of the following:

A. that the defendant knew Fernandez and considered him to be an "acquaintance" and not a friend;

B. that Fernandez and some other individuals performed work on the defendant's roof;

C. that law enforcement contacted the defendant about determining Fernandez's immigration status when Fernandez was arrested for a local crime;

D. that the defendant did not run any queries to determine Fernandez's immigrations status;

E. that the defendant advised law enforcement that Fernandez was a United States' citizen; and

Over the course of the next year, the United States, Fernandez, and/or the defendant engaged in, among other things, plea negotiations. During this time period, Fernandez proffered to agents and agents endeavored to obtain transcripts of all eight recordings described above, most of which were voluminous and needed to be translated into English from Spanish. Ultimately, over time, the United States was only able to negotiate a plea agreement with Fernandez.

As noted below, during this year after the defendant's arrest, the defendant moved for a number of continuances for different reasons, all of which were either joined in or were unopposed by the United States. Moreover, as mentioned below, this case was transferred from Assistant United States Attorney (AUSA) Rodney Brown, to AUSA Kathleen O'Malley, to Acting U.S. Attorney James Klindt, and then to the undersigned. This first transfer from AUSA Brown to AUSA O'Malley was the result of AUSA Brown leaving the U.S. Attorney's Office to serve in Iraq with the Department of Justice. Later, this case was transferred from AUSA O'Malley to AUSA Klindt when AUSA O'Malley determined, in an abundance of caution, that both she and AUSA Brown had a conflict of interest in prosecuting the defendant after they, among other things, worked on previous investigations with the defendant. Finally, when it became apparent that AUSA Klindt needed assistance in balancing the trial of this case with all of his other duties and responsibilities as Acting U.S. Attorney, the undersigned volunteered to assist him and filed a notice of appearance on May 31, 2007.

In preparing for trial this past summer, the undersigned and agents met with

---

F.    that the defendant agreed to cooperate with law enforcement in this investigation and was concerned about his retirement.

Fernandez on a number of occasions.  As part of these preparations, Fernandez, among other things, reviewed six of the eight recordings mentioned above in which he participated.  In one of these recordings, Fernandez advised the CI, in substance, that the defendant asked Fernandez to, during the summer of 2004, repair a roof at the defendant's residence that some tradesmen had previously repaired.  When Fernandez asked the defendant why the defendant did not take legal action against the tradesmen for faulty work, the defendant advised Fernandez that the defendant could not because he distributed marihuana to one of the tradesmen and had not been repaid by that tradesman.  The defendant then asked Fernandez if Fernandez would help the defendant distribute marihuana.

Although Fernandez previously mentioned some of this information during prior debriefings, agents had not been able to locate these tradesmen prior to meeting with and preparing Fernandez to testify at trial.  Among other things, a subsequent review of the defendant's toll records and bank records during the summer of 2007 helped to further identify these tradesmen.  After continued investigation, the first of these tradesmen was located and first interviewed on August 29, 2007.  The second was located and first interviewed on September 6, 2007.  Through counsel, the defendant was apprised of these developments as soon as they happened.  After evaluating their information, their testimony was presented to the federal grand jury on September 20, 2007 and helped secure Counts One, Two and Three of the Second Superseding Indictment.

## II. Procedural Overview

On June 6, 2006, the defendant was charged by complaint with distributing

7

marihuana on or about December 10, 2006. Doc. # 1.[9]  On July 12, 2006, the grand jury returned an indictment which charged the defendant with, among other things, distributing marihuana on or about December 10, 2005. Doc. # 15.  On July 19, 2006, the defendant was arraigned on the charges in this indictment, and trial was set for the September 5, 2006 trial term. Doc. ##s 20, 22.

On August 17, 2006, the defendant filed an unopposed motion to continue the September 5, 2006 trial, which the Court granted until the November 6, 2006 trial term.[10] Doc. ##s 25, 26.  In support of this motion, the defendant advised the Court that the defendant needed more time to prepare the defense in this case. Doc. # 25.  On October 23, 2006, the defendant made an ore tenus motion to continue the November 6, 2006 trial, which was granted by the Court until the January 3, 2007 trial term. Doc. ##s 31, 32, and 33.

On October 26, 2006, the grand jury returned a superseding indictment which charged the defendant with, among other things, conspiring to distribute marihuana between in or about the summer of 2004 and in or about January 2006. Doc. # 34.  On November 7, 2006, the defendant was arraigned on the charges in the first superseding indictment. Doc. # 37.

On December 18, 2006, the defendant made an ore tenus motion to continue the January 6, 2007 trial, which was granted by the Court until the April 2, 2007 trial term.

---

[9] Assistant United States Attorney (AUSA) D. Rodney Brown was counsel of record for the United States at the onset of this case.

[10]  As mentioned above, due to AUSA Brown's overseas assignment in Iraq, AUSA Kathleen O'Malley became counsel of record for the United States on July 27, 2006. Doc. # 23.

Doc. ##s 44, 45, and 46.  On March 1, 2007, the defendant filed an unopposed motion

to continue the April 2, 2007 trial, which was granted by the Court until the May 1, 2007,

trial term. Doc. ##s 47, 48.  In support of his motion, the defendant advised that he

needed more time to prepare for trial. Doc. # 47.

On April 16, 2007, the defendant filed a joint motion to continue trial  the May 1,

2007 trial, which was granted by the Court until the July 2, 2007 trial term. Doc. ##s 49,

54.[11]  On June 29, 2007, the defendant filed an unopposed motion to continue the July

2, 2007 trial, which was granted until the September 4, 2007, trial term. Doc. ##s 64, 65,

66.

In August 2007, the defendant filed numerous discovery and/or dispositive

motions to which the United States responded. Doc. ##s 69, 70, 71, 73, 75, 76, 80, 81.

Moreover, on August 23, 2007, the United States filed its first Federal Rule of Evidence

Rule 404(b) notice, to which the defendant filed a motion seeking to exclude such

evidence. Doc. ## 74, 77.  The United States filed a memorandum in support of its

intent to offer such evidence. Doc. # 82.

On August 27, 2007, the United States learned that Fernandez, one of its main

witnesses, was ill.  As a result, the United States filed a motion to continue the

September 4, 2007 trial, which was granted by the Court until the October 1, 2007 trial

term. Doc. 78, 79.  On September 7, 2007, the Court heard argument and testimony on

the above-mentioned motions. Doc. # 83.  At this hearing, the United States advised the

---

[11]  As mentioned above, due to potential conflicts involving AUSA Brown, AUSA
O'Malley and the defendant, AUSA James Klindt  became counsel of record for the
United States on April 18, 2007. Doc. # 52.  In order to assist AUSA Klindt, the
undersigned filed a notice of appearance in this case on May 31, 2007. Doc. # 58.

Court that the United States recently located some of tradesmen at the heart of its Rule 404(b) notice and memorandum in support of its intent to offer such evidence. Doc. ##s 74, 82. The United States also advised the Court of the possibility that the grand jury may consider potential charges relative to this Rule 404(b) evidence.

On September 20, 2007, the grand jury returned a second superseding indictment which charged the defendant in Counts, One, Two and Three with his marihuana related activities with the tradesmen. Doc. # 89. On September 23, 2007, the defendant filed an unopposed motion to continue the October 4, 2007 trial term, which was granted by the Court until the December 3, 2007 trial term. Doc. ##s 89, 91. On October 29, 2007, the defendant filed the Motion. Doc. # 104.

### III. Memorandum

**A.**     **<u>The defendant's arguments</u>**

In substance, the defendant argues that Counts One, Two and Three of the Second Superseding Indictment should be dismissed because the alleged pre-indictment delay in bringing those charges violated his constitutional right to due process. U.S. Const. 5th Amend. In support of this contention, the defendant argues that: (1) there is actual substantial prejudice inherent in bringing Counts One, Two and Three; and (2) that the United States deliberately withheld bringing such charges at the time of the original Indictment in order to gain a tactical advantage over the defendant at trial. Because there is no such thing as "inherent" prejudice for purposes of a pre-indictment delay analysis and the delay was not a deliberate ploy to gain a tactical advantage over the defendant, the Motion should be denied.

**B.**     **The defendant's due process rights have not been violated.**

While the limit on pre-indictment delay is usually set by the statute of limitations, in some circumstances, the Due Process Clause of the Fifth Amendment can bar an indictment even when the indictment is brought within the statue of limitation. United States v. Foxman, 87 F.3d 1220 (11th Cir. 1996).[12]  To prove a due process violation resulting from pre-indictment delay, a defendant must show: (1) actual prejudice; and (2) the delay resulted from a deliberate design by the government to gain a tactical advantage. United States v. Marion, 404 U.S. 307 (1971)(emphasis added).[13] The Fifth Circuit Court of Appeals sitting en banc reaffirmed the two-part test due process test in overturning a panel decision which attempted to balance the degree of prejudice against the reasons for delay. Crouch, 84 F.3d at 1509-14.

**1.     The Defendant has not suffered any actual prejudice**

As mentioned above, the defendant must prove that he suffered actual and substantial prejudice as a result of the pre-indictment delay. Marion, 404 U.S. at 324.  A showing of prejudice is a necessary but not a sufficient basis in and of itself for establishing a due process claim. Lovasco, 431 U.S. at 790.  That is, the defendant

---

[12]  Here, the statute of limitations is five years.  The original indictment was brought within a year of the defendant's then charged conduct, and Counts One, Two and Three of the Second Superseding Indictment were brought well less than four years after the charged conduct.

[13]  In United States v. MacDonald, 435 U.S. 850, 861 (1978), the Supreme Court held that, "[u]nlike the protection afforded by the double jeopardy clause, the speedy trial clause does not encompass. . . 'a right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all." Id.  The same conclusion applies a fortiori to due process claims of pre-indictment delay. United States v. Crouch, 84 F.3d 1497, 1516 (5th Cir. 1996).

must prove specific prejudice--- generalized or speculative allegations of prejudice will not suffice. <u>Marion,</u> 404 U.S. at 325-26; <u>United States v. Blevins,</u> 593 F.2d 646, 647 (5th Cir. 1979). Allegations of actual prejudice, which are commonly raised and often rejected by courts, include: (1) loss of or impaired memory; (2) death or unavailability of one or more defense witnesses; (3) loss or destruction of exculpatory evidence; (4) disruption of personal life; and (5) the extended duration of the delay. <u>citations omitted,</u>

Here, the defendant's allegations of prejudice are not sufficient to establish a due process violation. For one, the defendant concedes that he can not articulate any of the usual grounds in support of a claim of actual prejudice. That is, the defendant admits that no tangible evidence has been destroyed and no witnesses have died during the alleged delay. <u>See</u> Motion at 4. Instead, the defendant argues that there is "inherent" prejudice "in the bringing of such stale charges." <u>Id.</u> Courts have routinely held that bald allegations of inherent prejudice do not, as a matter of law, rise to the level of the required actual prejudice. <u>See, e.g., United States v. McGough,</u> 510 F.2d 598, 603 (5th Cir. 1975) <u>citing</u> <u>Marion,</u> 404 U.S. at 326 ("the United States Supreme Court made it clear that when pre-indictment delay is asserted, actual prejudice and not merely 'the real possibility prejudice inherent in any extended delay is a necessary element which must be shown before the restraints of the due process clause will be applied to bar a prosecution for delay.") As such, the Motion should be denied because the defendant has not suffered actual prejudice.

**2.      The pre-indictment delay was not a deliberate act by the United States to gain a tactical advantage over the defendant.**

As mentioned above, the defendant must <u>also</u> prove that the government

intentionally caused the delay in order to gain a tactical advantage. <u>Marion,</u> 404 U.S. at

324.  In support of this allegation, the defendant asserted that these charges could have

been brought earlier, but that the United States withheld such charges to gain a tactical

advantage should the defendant proceed to trial.  This argument is wrong.

For one, the United States should not be penalized for a delay that the defendant

helped create.  Here, the defendant contributed to the pre-indictment delay by moving

for six (6) consecutive continuances since the time of his original indictment.[14]  While it

is true that the United States utilized this time to help transfer the case from one AUSA

to another and to also work on its case, the continuances were not a deliberate ploy to

gain a tactical advantage over the defendant.  Indeed, the defendant has cited no

authority that would bar the United States from continuing to work on its investigation

and/or require the United States to charge all facets of a case at the time that an

indictment is first brought.

Moreover, while it is true that in some cases the United States does not seek to

bring new charges in anticipation of and/or as part of plea agreement negotiations, such

was not the case here.  Back on March 1, 2007, the defendant, in a motion to continue,

---

[14]  While it is true that had the United States not moved for a continuance based upon Fernandez's August 2007 illness at least one of the trademen would not have been located prior to the scheduled September 4, 2007 trial, the United States is adamant that its continuance request was <u>not</u> a ploy to secure additional witnesses or to bring additional charges.

forewarned the United States that this case would proceed to trial. Doc. # 47.[15]  As

such, assuming *arguendo* that the United States had the evidence back in March of

2007 to support Counts One, Two and Three of the Second Superseding Indictment,

there was no tactical advantage to be gained by failing to seek it for nearly six months.

As a result, it cannot be said that these continuances were deliberately designed by the

United States to gain a tactical advantage over the defendant.

Second, as mentioned above, the defendant's argument ignores the fact that the

United States could not have pursued Counts One, Two and Three of the Second

Superseding Indictment until after the tradesmen were located and debriefed.  Here, the

United States had not physically located the tradesmen until August of 2007.  Once they

were located and debriefed, the United States diligently sought to obtain the Second

Superseding Indictment soon thereafter.  Additionally, the defendant incorrectly

presumes that the United States was fully aware of all aspects of the defendant's

criminal activities at the time of the original indictment, that is, that defendant presumed

that Fernandez early on provided the United States with everything needed to seek the

Second Superseding Indictment. See Motion at 4.  As with most litigation, the time

spent preparing a case for trial, like preparing Fernandez to testify and continuing to

review the defendant's records, oftentimes brings additional information to light ---

sometimes this information is beneficial and other times it is not.  Discovering additional

evidence, like the tradesmen's whereabouts, while preparing a case for trial and/or

following logical leads is a reality of litigation and not a deliberate ploy to gain a tactical

---

[15]  In the March 1, 2007 motion to continue, the defendant specifically alerted the
Court that the defendant needed more time to prepare for trial. Doc. # 47.

advantage.

Moreover, the United States has no obligation to bring charges as soon as the government has enough evidence to seek an indictment, but may instead wait until the government is satisfied that it has enough evidence to establish guilt beyond a reasonable doubt. <u>See</u> <u>United States v. Lovasco,</u> 431 U.S. 783 (1977); <u>United States v. Thomas,</u> 62 F.3d 1332 (11th Cir. 1995); <u>United States v. Butler,</u> 792 F.2d 1528 (11th Cir. 1986). Here, while it is true that Fernandez spoke of the tradesmen prior to the summer of 2007, these tradesmen were not actually located until August of 2007. Prior to that time, it would have been difficult to bring the charges suggested by the defendant based solely on Fernandez's information, and the United States could have likely been faced with a *corpus delicti* problem. Under these circumstances, a decision to wait on seeking such charges was inherently reasonable and not a deliberate ploy to gain a tactical advantage over the defendant.

WHEREFORE, the United States respectfully requests that the Court enter an order denying the defendant's Motion to Dismiss Counts One, Two and Three of Second Superseding Indictment Because of Pre-trial Delay (the "Motion."). Doc. # 104.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By:    _s/ D. J. Pashayan_
D. J. PASHAYAN
Assistant United States Attorney
USA No. 086
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202
(904) 301-6300

**U.S. v. Tony Henderson**                          **Case No. 3:06-cr-211(S2)-J-32HTS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2007, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

      Mark Rosenblum, Esq.

I hereby certify that on November 10, 2007, a true and correct copy of the

foregoing document and the notice of electronic filing was sent by United States Mail to

the following non-CM/ECF participant(s):

      None.


      _s/ D. J. Pashayan_
      D. J. PASHAYAN
      Assistant United States Attorney