UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

CASE NO. 3:06-cr-211(S2)-J-32HTS

v.

TONY HENDERSON

**UNITED STATES' AMENDED RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SEVER COUNTS ONE, TWO, and THREE FROM COUNTS FOUR, FIVE, SIX, SEVEN, EIGHT, NINE, TEN, AND ELEVEN IN THE SECOND SUPERSEDING INDICTMENT**

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this response in opposition to the defendant's motion to sever Counts One, Two, and Three from Counts Four, Five, Six, Seven, Eight, Nine, Ten, and Eleven in the Second Superseding Indictment (the "Motion"). Doc. # 105. For the following reasons, the Motion should be denied.

### I. Overview[1]

**The Conduct Underlying Counts One through Three of the Second Superseding Indictment.**

In or about the summer of 2003, the defendant paid some tradesmen to work on the roof of his residence in Baker County, Florida. During the time period of the job and even into the fall of 2003, the defendant approached one of the tradesmen (Tradesman-1), a convicted felon and drug user, about obtaining some marihuana from the defendant. In discussing the marihuana with Tradesman-1, the defendant referred to marihuana using the code word "motors" or "engines" and advised, in substance, that

---

[1] This overview is a proffer of some of the United States' anticipated evidence and testimony to be presented at trial.

the price would be $800.00 per pound if purchased and it would be slightly higher if "fronted."[2]  Tradesman-1 did not obtain marihuana from the defendant.

After the tradesmen performed work on the defendant's roof, the defendant maintained contact with another one of the tradesman (Tradesman-2), who was a convicted felon, on probation, and a drug user.  In or about November 2003, the defendant contacted Tradesman-2 and solicited Tradesman-2 to obtain marihuana from the defendant.  As with Tradesman-1, the defendant referred to marihuana using the code word "motors" or "engines."  Shortly thereafter, the defendant provided Tradesman-2 with a small sample of marihuana that the defendant had available.  After Tradesman-2 advised the defendant that Tradesman-2 could sell this marihuana, the defendant "fronted" approximately one pound of marihuana to Tradesman-2.  Tradesman-2 distributed this marihuana and later paid the defendant back approximately $900.00 for the pound.  Later, in or about May 2004, the defendant "fronted" approximately five pounds of marihuana to Tradesman-2.  Tradesman-2 distributed this marihuana to another tradesman (Tradesman-3) and advised Tradesman-3 that the defendant provided this marihuana to Tradesman-2.

Tradesman-2 and Tradesman-3 had difficulty in selling this marihuana because it was of poor quality.  Because of this, Tradesman-2 did not pay the defendant back and moved out of the area.  After Tradesman-2 left the area, the defendant approached Tradesman-1 and offered to pay Tradesman-1 money for Tradesman-2's new telephone number.

---

[2] "Fronting" means that the defendant would provide the marihuana on consignment and expected to be paid after it was sold the marihuana to someone else.

**The Conduct Underlying Counts Four through Eleven of the Second Superseding Indictment.**

As mentioned in the original notice of intent to use other act evidence, these tradesmen did not perform a satisfactory job. During the summer of 2004, the defendant then asked a long time acquaintance and illegal alien, Pedro Fernandez, if Fernandez and some of Fernandez's acquaintances would work on the defendant's roofing job. After Fernandez and his acquaintances completed this job, the defendant advised Fernandez, in substance, that the defendant could not pursue legal action against the tradesmen for their incomplete work because the defendant had distributed marihuana to one of the tradesmen and feared that this would be disclosed. The defendant then asked Fernandez if Fernandez knew any individuals who wanted to purchase marihuana and later provided Fernandez with some samples of the marihuana that the defendant had available for distribution.

Fernandez then spoke with, among other people, a confidential informant (CI) about purchasing some of the defendant's marihuana.[3] Fernandez also advised the CI that the defendant was a United States Border Patrol agent. The CI relayed this information to Live Oak (Florida) Police Department Detective A.P. Land, who initiated an investigation of the defendant. The CI advised Fernandez that the CI wanted to purchase marihuana for a customer of the CI.[4]

As part of this investigation, on November 23, 2004, the CI and Fernandez

---

[3] Fernandez did not know that the CI was cooperating with law enforcement.

[4] The CI's customer was going to be an undercover police officer.

traveled to the defendant's residence in Baker County, Florida, for the purpose of meeting with the defendant and attempting to obtain marihuana from him. While at the residence, the defendant's wife advised Fernandez that the defendant was not at home. Although the CI was not able to then obtain any marihuana, the CI maintained periodic contact with Fernandez in the hope of obtaining marihuana from the defendant at a later point in time.

Later, the CI engaged in eight (8) consensual recorded conversations with Fernandez and/or the defendant, four (4) of which the United States intends to offer into evidence at trial. During these conversations, the defendant, Fernandez, and the CI utilized the code word "goats" to refer to marihuana. The following is a summary of those four the recorded conversations:

      A.    on the morning of on December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. During an earlier part of this conversation, Fernandez advised the CI about the defendant's marihuana transaction with the tradesmen and the samples of the marihuana that the defendant previously provided to Fernandez, which are mentioned above. Fernandez also advised the CI that the defendant spoke with another individual known to Fernandez and the CI about purchasing marihuana but that the defendant only wanted to distribute marihuana by utilizing Fernandez as a broker. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant used to

4

       have forty pounds of marihuana available for distribution but that the defendant needed to find more marihuana from another source of supply. After Fernandez spoke with the defendant, Fernandez and the CI discussed their November 23, 2004 trip to the defendant's residence when they attempted to obtain marihuana from the defendant;

B.      in the early afternoon of December 10, 2005, the defendant, Fernandez and the CI all discussed purchasing marihuana from the defendant later that day. Later during the conversation, Fernandez spoke with the defendant who advised Fernandez, in substance, that the defendant obtained four pounds of marihuana and inquired as to how much Fernandez and the CI would pay for the marihuana. After Fernandez spoke with the defendant, Fernandez and the CI discussed their plans to travel to the defendant's residence later that day;

C.      On January 12, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant; and

D.      On January 23, 2006, the CI discussed with the defendant, among other things, the CI's desire to purchase more marihuana from the defendant.

As mentioned above, the CI and Fernandez traveled to the defendant's residence on December 10, 2005. Upon arriving at the defendant's residence,

Fernandez exited the CI's vehicle, made contact with the defendant, and purchased marihuana from the defendant. After obtaining this marihuana from the defendant, Fernandez re-entered the CI's vehicle and departed from the residence. The CI later provided this marihuana to law enforcement agents.

On June 6, 2006, Drug Enforcement Administration (DEA) and other agents arrested the defendant. After being advised of and waiving his Miranda rights, the defendant advised agents, in substance, of the following:

- A. that the defendant knew Fernandez and considered him to be an "acquaintance" and not a friend;
- B. that Fernandez and some other individuals performed work on the defendant's roof;
- C. that law enforcement contacted the defendant about determining Fernandez's immigration status when Fernandez was arrested for a local crime;
- D. that the defendant did not run any queries to determine Fernandez's immigrations status;
- E. that the defendant advised law enforcement that Fernandez was a United States' citizen;
- F. that the defendant agreed to cooperate with law enforcement in this investigation and was concerned about his retirement.

On September 20, 2007, the grand jury returned a second superseding indictment which charged the defendant in Counts, One, Two and Three with his marihuana related activities involving the tradesmen and Counts Four through Eleven

which charged the defendant with his marihuana related activities involving Fernandez, the CI, and others. Doc. # 89.  On October 29, 2007, the defendant filed the Motion. Doc. # 105.

### III. Memorandum

**A.     The defendant's arguments**

In his motion, the defendant seeks to sever Counts One through Three from Counts Four through Eleven of the Second Superseding Indictment.  In support of the Motion, the defendant argues, in substance, that: (1) Counts One through Three are not similar to Counts Four through Eleven; and (2) there is a prejudicial "spillover" effect of presenting evidence related to one set of charges in the same trial as the other.  The Court should deny the Motion because Counts One through Three are of the same or similar character as and gave impetus to Counts Four through Eleven.  Additionally, there is no compelling prejudice warranting a severance.

**B.     The Joinder/Severance Analysis**

In reviewing a motion to sever, the Eleventh Circuit Court of Appeals undertakes a two-step analysis to determine whether separate charges were properly tried at the same time. United States v. Walser, 3 F.3d 380, 385-87 (11th Cir. 1993).  First, the United States must demonstrate that the initial joinder of the offenses was proper under Federal Rule of Criminal Procedure 8(a). Id. at 385.[5]  Rule 8(a), however, is broadly construed in favor of initial joinder. Id. citing United States v. Smalley, 754 F.2d 944,

---

[5] Rule 8(a) states, in relevant part, that: "the indictment. . . may charge a defendant in separate counts with two or more offenses if the offenses. . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common plan or scheme."

946 (11th Cir. 1985). Proper joinder under Rule 8(a) is a matter of law reviewed *de novo.* Walser, 3 F.3d at 385. Next, the Eleventh Circuit determines whether the district court abused its discretion by denying a motion to sever and will not reverse the denial of a motion to sever absent clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection. Id.

### 1. **Joinder was proper.**

As mentioned above, under the first step of the analysis, the United States must demonstrate that the initial joinder of the offenses was proper under Rule 8(a). Rule 8(a) states, in part, that an indictment may charge a defendant in separate counts with two or more offenses if the offenses are of the same or similar character or are connected with or constitute parts of a common plan or scheme. Because Counts One through Three are of the same or similar character as and provided the defendant with the impetus to commit Counts Four through Eleven, joinder was proper.

#### a. **The charges are of the same or similar character.**

Rule 8(a) is not limited to crimes of the same character, but also covers similar character, which means: "nearly corresponding; resembling in may respects; somewhat alike; having a general likeness. Id. citing United States v. Werner, 620 F.2d 922, 926 (2d Cir.1980).[6] Moreover, when offenses are joined under Rule 8(a) by virtue of their "same or similar" character, the offenses need only be similar in category, not in

---

[6] Notwithstanding the fact that crimes charged in Walser were distinct in time, the Eleventh Circuit held that the separate charges related to fraudulent activity designed to procure unwarranted federal crop relief were of "similar character" Walser, 3 F.3d at 385.

8

evidence. United State v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002).[7] This similarity can be apparent from the face of the indictment or by the United States' representations before trial, if such representations are borne out in the evidence presented during trial. Id. at n. 10; see also United States v. Paul, 194 Fed. Appx. 792, 796-97 (11th Cir. 2006).[8]

Courts have routinely held that separate drug offenses are of the "same or similar" character and warrant joinder. See, e.g., Paul, 194 Fed. Appx. at 797; United States v. Tillman, 470 F.2d 142, 143 (3rd Cir. 1972)(joinder of counts alleging separate sales of cocaine and heroin were proper); United States v. Chevalier, 776 F. Supp. 853 (D. Vt. 1991)(joinder of two separate counts of distributing cocaine was appropriate even though separated by almost four months because offenses were of same or similar character); see also United States v. Jawara, 474 F.3d 565 (9th Cir. 2007);[9] Kivette v. United States, 230 F.2d 749 (5th Cir. 1956).[10]

---

[7] In Hersh, the Eleventh Circuit held that separate counts of child molestation and child pornography were of "similar character" involving the mistreatment of children. Id.

[8] In Paul, which is similar to the present case, the Eleventh Circuit found that separate firearm and marihuana charges related to separate search warrants were of the "same character" warranting joinder. Paul, 194 Fed. Appx. at 797.

[9] In Jawara, the Ninth Circuit Court of Appeals looked at the following factors to determine whether separate offenses were of "same or similar" character: (1) temporal proximity; (2) physical location; (3) modus operandi; (4) identity of victims; and (5) evidentiary overlap. 474 F.3d 565.

[10] In Kivette, the Fifth Circuit Court of Appeals noted that the defendant's argument that offenses could not be charged in one indictment because sales were on different dates, were separate transactions, and were not part of a continuous transaction or conspiracy ignores the plain reading of Rule 8(a) which allows "same or similar" offenses to be joined together. 230 F.2d 749

Here, Counts One through Three are of the "same or similar character" as Counts Four through Eleven. First, all of these offenses involve to defendant distributing marihuana in violation of the Controlled Substances Act. 21 U.S.C. 841 et seq. Second, the defendant's conduct as charged in Counts One through Eleven is fluid and not separated by much, if any, time. That is, the defendant is alleged to have distributed marihuana to one of the tradesmen in or about May 2004. Shortly thereafter, in or about the summer of 2004, the defendant approached Fernandez about dealing in marihuana after one of these tradesmen did not pay the defendant for some of the "fronted" marihuana. Third, the fact that one of these tradesmen did not pay the defendant for some of the "fronted" marihuana was motive for the defendant to approach Fernandez about obtaining cash customers for marihuana. Similarly, Fernandez's testimony as to how and why he came to distribute marihuana with the defendant as charged in Counts Four through Eleven will overlap with the defendant's discussions of and distribution of marihuana in Counts One through Three. Finally, most of these charged offenses involve conduct which occurred in Baker County. Specifically, the defendant distributed marihuana to both Fernandez and the CI in Baker County. As such, Counts One through Four are of the "same or similar conduct" as Counts Four through Eleven.

    **b.**  **The charges are connected with or constitute parts of a common plan or scheme.**

Under Rule 8(a), the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes. United States v. Dominguez, 226 F.3d 1235, 1239 (11th Cir. 2000). Moreover,

10

regardless of whether both sets of charges involve the presentation of the same evidence, the fact that one activity provides the impetus for another is sufficient to join both offenses. Paul, 194 Fed. Appx. at 797.  As mentioned above, the fact that one of the tradesmen did not pay the defendant for some of the "fronted" marihuana was motive for the defendant to approach Fernandez and see if Fernandez could obtain cash paying customers for the marihuana.  Ironically, the defendant chose to discuss and distribute marihuana to individuals whose credibility could be attacked--- apparently to protect him from the detection of law enforcement.  The defendant at first approached the tradesmen, all of whom have prior convictions, a history of drug use, and/or were on probation.  Later, the defendant approached Fernandez, who is a friend of the defendant, an illegal alien, and someone who would not likely turn the defendant in for fear of deportation.  In any event, the tradesman's failure to pay the defendant for some of the marihuana, as charged in Counts One through Three, was impetus for the defendant to distribute marihuana with Fernandez, as charged in Counts Four through Eleven, as part of a common scheme for joinder purposes.

    **2.**     **There is no compelling prejudice**

Next, under the analysis described above, there must be compelling prejudice to warrant a severance against which the district court can offer no protection. Walser, 3 F.3d at 385-87.[11]  To justify a reversal, "more than some prejudice must be shown; the

---

[11] The court's discretion in handling a motion to sever should take into consideration the interest of the public in avoiding multiplicity of litigation, the public's interest in efficient and economic administration of justice, and the interest of the defendant in obtaining a fair trial. United States v. Wirsing, 719 F.2d 859, 864-65 (11th Cir. 1983); United States v. Baker, 432 F. 3d 1189, 1236 (11th Cir. 2005)

[defendant] must demonstrate that he received an unfair trial and suffered compelling prejudice." Id. at 386. (citations omitted).  "This is a heavy burden and one which conclusory allegations cannot carry." Id. (citations omitted).  The test for assessing compelling prejudice is whether under all of the circumstances of a particular case it is within the capacity of the jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on the defendant's own acts, statements, and conduct in relation to allegations contained in the indictment and render a fair and impartial verdict. Id. (citations omitted).  If so, "though the task be difficult," there is no compelling prejudice. Id. (citations omitted).  Moreover, if the possible prejudice <u>may</u> be cured by a cautionary instruction severance is not required. Id. (emphasis added).

      a.    **The defendant's allegations are conclusory, not compelling and a cautionary instruction may cure any possible prejudice.**

In the Motion, the defendant baldly asserts that the prejudice to the defendant is plain, that is, the evidence related to either set of charges may not allegedly be enough to obtain a conviction on their own. See Motion at 4.  The defendant's argument fails because it is conclusory and couched in terms of possibilities.  Ironically, the defendant has cited to no case law in support of this proposition.  Nevertheless, the Eleventh Circuit in a Rule 8(b) context has rejected similar allegations and found that: "it is not enough for a defendant appealing a denial of severance to show that acquittal would have been more likely had the defendant been tried separately, since some degree of bias is inherent in any joint trial." Baker, 432 F.3d at 1236; see also United States v.Patel, 2002 WL 1611593 *3 (N.D. Ill. July 18 2002) citing Zafiro v. United States, 506

U.S. 534, 539 (1993) (defendants may not obtain a severance merely because they may have a better chance of acquittal in separate trials).[12]

In any event, the defendant's argument also ignores the fact that the possible prejudice or "spillover evidence" may be cured by a cautionary instruction. See Walser, 3 F.3d at 385-87.  Here, the Court will likely instruct the jury that:

> " a separate crime or transaction is charged in each count of the indictment.  Each charge and the evidence pertaining to it should be considered separately.  The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not affect your verdict as to any other offense charged."

11th Cir. P.J.I. No. 10.2; see also United States v. Wingate, 997 F.2d 1429 (11th Cir. 1993) citing United States v. Simon, 839 F.2d 1461, 1472 (11th Cir. 1988)(rejecting a claim that "spillover evidence" is compelling prejudice and holding that a district court need not grant a motion for severance even if jury's task of distinguishing evidence is a difficult one).  There is nothing in the Motion to suggest that the jury will not follow the Court's limiting instructions and appraise the independent evidence against the defendant solely on his own acts, statements, and conduct in relation to allegations contained in the indictment and render a fair and impartial verdict. See Id.[13]  Assuming

---

[12] In Patel, the defendant unsuccessfully argued to the court that there was prejudicial spillover in trying charges of bank robbery by force and bank fraud together as opposed to separately. Patel, 2002 WL 1611593 at *3.

[13] The United States' evidence in this case is fairly straightforward and will not confuse the jury.  Counts One, Two, and Three will likely be proven by the testimony of two or three of the tradesmen, co-conspirator statements offered by Fernandez that were, in part, the subject of a prior motion in limine, toll and bank records.  Counts Four through Eleven will likely be proven by audio and video recordings, toll records and bank records, and the testimony of Fernandez, the CI, and certain law enforcement officers and analysts.

13

*arguendo* that this a difficult task for the jury, that alone is not compelling prejudice warranting a severance. See Id.

    **b.    There is no prejudice in the joint trial of all these charges because evidence of one set would be admissible under Rule 404(b) at a separate trial of the other.**

Second, the defendant's argument ignores the fact that where evidence that a defendant committed one crime would be admissible at a separate trial for another crime, the defendant does not suffer additional prejudice where the two offenses are tried together. See, e.g. United States v. Dowd, 451 F.3d 1244, 1249 (11th Cir. 2006)(we need not decide whether these charges were properly joined because there was no compelling prejudice because the jury would have heard all of the firearms related evidence even in a severed trial on only the robbery charge); United States v. Scott, 659 F.2d 585, 589 (11th Cir. 1981); United States v. Morris, 647 F.2d 568, 571 (11th Cir. 1981); United States v. Harris, 635 F.2d 526 (6th Cir. 1980).

Here, the evidence related to Counts One through Three is either "inextricably intertwined" with or admissible Rule 404(b) evidence of, among other things, the defendant's intent and motive to traffic in marihuana as charged in Counts Four through Eleven.[14] That is, the fact that the defendant discussed his desire to distribute marihuana with the tradesmen and in fact distributed marihuana to one of the

---

    [14] In the event that the Court grants the Motion, the United States, consistent with its previously stated position that the facts and circumstances surrounding Counts One through Three of the Second Superseding Indictment are admissible as either "inextricably intertwined" with and/or admissible Rule 404(b) evidence of Counts Four through Eleven of the Second Superseding Indictment, would respectfully request that the Court enter an order in advance of December 3, 2007 allowing the United States to present all of its evidence related to the facts and circumstances surrounding Counts One through Three at the trial of Counts Four through Eleven.

tradesmen is evidence that the defendant intended to distribute marihuana in Counts Four through Eleven.  Also, the fact that one of the tradesmen did not pay the defendant for some of the marihuana was motive for the defendant to approach Fernandez and see if Fernandez could obtain paying customers for the marihuana.

Moreover, as part of a common plan or scheme, the defendant chose to discuss and distribute marihuana to individuals whose credibility could be attacked.  As mentioned above, the defendant at first approached the tradesmen.  They would not likely report the defendant to law enforcement because of their prior convictions, drug use, and/or status as probationers.  Later, the defendant approached Fernandez, who is a friend of the defendant, an illegal alien, and someone who would not likely turn the defendant for fear of deportation.  As such, there is no compelling prejudice in a joint trial because the evidence related to Counts One through Three would be admissible in evidence at a separate trial of Counts Four through Eleven.

      **c.**      **The public has a strong interest in the joint trial of all these charges.**

Lastly, the Motion should be denied because the public has a strong public interest in avoiding multiplicious litigation.  Here, the charges are levied against a defendant who is a sworn federal law enforcement officer--- one who took an oath to protect the public and uphold the law.  Separate trials for essentially the same or similar conduct, in which one series of these events gave rise or impetus to the other, will unnecessarily prolong the determination of whether the defendant should remain in the public service and entrusted with their confidence.

WHEREFORE, the United States respectfully requests that the Court enter an order prior to December 3, 2007 denying the defendant's motion to sever Counts One,

Two, and Three from Counts Four, Five, Six, Seven, Eight, Nine, Ten, and Eleven in the Second Superseding Indictment (the "Motion"). Doc. # 105.  The United States further respectfully suggests that no testimony on the motion is needed.

                                        Respectfully submitted,

                                        ROBERT E. O'NEILL
                                        United States Attorney

By:   *s/ D. J. Pashayan*
        D. J. PASHAYAN
        Assistant United States Attorney
        USA No. 086
        300 North Hogan Street, Suite 700
        Jacksonville, Florida 32202
        (904) 301-6300

U.S. v. Tony Henderson								Case No. 3:06-cr-211(S2)-J-32HTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Mark Rosenblum, Esq.

I hereby certify that on November 12, 2007, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participant(s):

>None.

>*s/ D. J. Pashayan*
>D. J. PASHAYAN
>Assistant United States Attorney