**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                      CASE NO. 3:06-cr-211-J-32TEM

TONY HENDERSON

## REPORT AND RECOMMENDATION[1]

This case is before the Court on Defendant Tony Henderson's (hereinafter referred to as "Petitioner" or "Henderson") Motion to Return/Disposition of Property (Doc. #155), and the United States' response in opposition (Doc. #159).[2] The property in issue consists of nineteen (19) firearms that were turned over to the Federal Bureau of Investigation (FBI) by the Petitioner shortly after his arrest in the case, as a condition of bond for pretrial release. Henderson was originally arrested on a controlled substance charge, which was alleged by a complaint. Subsequently, an initial indictment and two superceding indictments were returned against him (see Docs. #15, #34, #89). Each indictment contained a forfeiture provision seeking forfeiture of a house owned by Petitioner and his wife, but none of the indictments sought forfeiture of the firearms.

On November 30, 2007, Henderson pled guilty to a drug charge pursuant to a plea agreement (Doc. #128). He was adjudicated guilty on December 6, 2007 (Doc. #129). Thus, Henderson became a convicted felon as of December 6, 2007. Henderson was

---

[1] Within fourteen (14) days after service of this document, specific, written objections may be filed in accordance with 28 U.S.C. § 636, Rule 59, Federal Rules of Criminal Procedure, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida. Failure to file a timely objection waives a party's right to review. Fed. R. Crim. P. 59.

[2] The Court recognizes Petitioner filed three renewed motions for return of this same property, during which time the FBI investigation continued (see Docs. #162, #163, #165).

sentenced on April 21, 2008 (*see* Docs. #144, #146). Forfeiture was not pursued as to the house or other property.

Since Henderson was convicted of a felony, more than a year after his surrender of the firearms, and the relief sought by the instant motion requests the firearms be given to either his wife or Mr. Robert Rosier, the Court finds Henderson's motion implicitly recognizes it would be illegal to return the firearms to him. Petitioner states in his motion that he transferred his "non-possessory" interest in the firearms to Mr. Robert Rosier on February 4, 2009, and that Mr. Rosier had filed a claim for the firearms which the FBI denied. In the instant motion, Petitioner also stated that he had filed an appeal of the denial to return with the FBI on June 3, 2010, but no decision had been made by the FBI when the motion was filed.

The United States opposes the relief sought by Petitioner, claiming to grant the motion would give Henderson constructive possession of the weapons, which is against the law (*see generally*, Doc. #159).

Previously, the Court took the matter under advisement, requiring "[t]he parties shall provide the Court a copy of the final agency action once they receive it. Once the United States receives the final decision of the agency, it shall ensure that the firearms are not sold or destroyed until the Court has issued its Order in the matter." (Doc. #160, Court Order.) The following chronology of Henderson's efforts to obtain release of the firearms is based on the exhibits he introduced at a hearing on May 16, 2011, as well as his testimony at the hearing:[3]

---

[3]The non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing

1. On June 12, 2006, an FBI agent sent a detailed list of the firearms by facsimile to attorney Alexander Christine, Jr., (Ex. 2).[4] The cover sheet contains a handwritten note referring to a proffer, "hopefully" to occur that day.

2. On June 13, 2008, attorney Mark Rosenblum wrote a letter to the United States Attorney's office asking what steps could be taken to transfer the firearms (Ex. 1). No reply was received.

3. In November 2008, Defendant claims he contacted the FBI seeking to transfer possession and ownership of the firearms and was advised to submit a letter and "bill of sale" (Doc. #165, paragraph 7).

4. On December 1, 2008, Defendant signed a bill of sale transferring the firearms to William Boggs (Ex. 3).

5. In December 2008, Defendant telephoned the FBI to inquire about obtaining the transfer of the firearms.

6. On December 17, 2008, Defendant wrote a letter to the agent in charge of the Jacksonville FBI office, advising the FBI he had transferred possession and ownership of the firearms to Boggs and asking when the actual transfer of the property could be accomplished (Ex. 3).

7. On March 2, 2009, Defendant wrote a letter to the FBI advising that Mr. Boggs had decided not to take possession and ownership of the firearms; instead, Mr. Robert Rosier would take them (Ex. 4). A bill of sale dated February 2, 2009, from Henderson to

---

is desired.

[4]Mr. Alexander R. Christine, Jr., represented Henderson in this case until he was given leave to withdraw on September 6, 2006 (see Doc. #26).

Rosier, was attached to the letter. Notably, the bill of sale contains language that the seller certifies, "He is legally entitled to sell and/or transfer title of his firearms" (Ex. 4 at 2).

8. On April 6, 2009, Defendant wrote a followup letter to the FBI, again asking about a transfer of the guns to Mr. Rosier (Ex. 5).

9. After four unsuccessful attempts from April 2009 through June 2009, to contact an agent with knowledge of the firearms by telephone, on December 14, 2009, Henderson apparently talked with "Agent Ubanks" by phone and then wrote a letter memorializing the conversation and asking for a telephone call from someone with authority to act (Ex. 6).

10. On December 16, 2009, the special agent in charge of the FBI office in Jacksonville wrote a letter to Defendant stating that the firearms had been "seized" by the Federal Bureau of Investigation on June 9, 2006, and advising Henderson of a procedure under Title 41, U.S.C. § 128-48, 102-1, in which he could attempt to claim the firearms (Ex. 8).

11. On December 28, 2009, Defendant wrote a letter to the FBI claiming the firearms for Mr. Rosier (Ex. 9).

12. Also on December 28, 2009, Mr. Rosier sent the FBI a letter claiming he had purchased the firearms from Henderson to help Henderson and his family with their financial situation (Ex.10).

13. On January 5, 2010, the FBI wrote to Henderson, advising it had received Henderson's "January 4, 2010" claim for the weapons and would conduct an investigation (Ex. 7).

14. On May 21, 2010, the FBI wrote Defendant that his claim had been denied and that he could request reconsideration of that decision with ten (10) days (Ex. 11). Also on

May 21, 2010, the FBI wrote to Mr. Rosier stating his claim to the firearms that had been filed on December 30, 2009 was denied and he had ten (10) within which to request reconsideration (Ex. 12).

15. On June 3, 2010, Defendant wrote a letter to the Finance Division of the FBI seeking reconsideration of the initial decision (Ex. 13).

16. On January 26, 2011, the FBI wrote Henderson advising his appeal had been denied as a final decision (Ex. 14).

### *Analysis*:

Henderson's request must be denied under Eleventh Circuit authority. In *United States v. Howell*, 425 F.3d 971 (11th Cir. 2005), a defendant filed a motion under Rule 41(g), Fed. R. Crim. P., to recover cash and firearms after the close of all criminal proceedings in the case. The court treated the motion as a civil motion in equity. The court noted the defendant was the record owner of the firearms, but found that returning firearms to a convicted felon would violate Title 18, U.S.C. § 922(g). The court then noted that to prevail under Rule 41(g), the owner must have "clean hands" under the equitable test, but a defendant convicted of a drug offense has "unclean hands" and is not entitled to equitable relief. *Id.* at 974.

The *Howell* court also examined whether due process would allow the defendant to designate someone else to receive the firearms or to have the weapons sold and the proceeds provided to him. Relying on an Eighth Circuit opinion, *United States. v. Felici,* 208 F.3d 667 (8th Cir. 2000), the *Howell* court found the defendant could not receive the firearms "either directly or indirectly." *Id.* at 976. The court agreed with the reasoning in *Felici* that the prohibition of a felon possessing firearms applied to either actual or

5

constructive possession and allowing a defendant to transfer the firearms or receive money from their sale would be constructive possession. *Id.* at 976-77.

Although the Court recognizes that the firearms in Henderson's case were surrendered by him as a condition of bail, rather than seized under Rule 41, that difference does not appear significant under *Howell.* "The fact that the defendant was in lawful possession and was not a convicted felon when he acquired the firearms is irrelevant," stated the Eleventh Circuit, noting that section 922(g) was designed to work retroactively to prevent constructive or actual possession of firearms by a convicted felon. *Id.* at 977.[5]

The Seventh Circuit later agreed with the Eleventh Circuit and cited *Howell* in *United States v. Miller*, 588 F.3d. 418 (7th Cir. 2009). A district court in *United States v. Approximately 627 Firearms, More or Less,* 589 F.Supp.2d 1129 (S.D. Iowa 2008), also agreed with the *Howell* conclusion on constructive possession, but found it was not prohibited from ordering the sale of the defendant's personal firearms and distributing the proceeds of the sale to the defendant. *Id.* at 1140. Although the court in *627 Firearms* was ruling on a forfeiture motion in ordering the sale of personal firearms not used in an offense, it relied on *Cooper v. City of Greenwood*, 904 F.2d 302, 306 (5th Cir. 1990), an action under 42 U.S.C. § 1983.

Here, Henderson relies on *United States v. Brown*, 754 F.Supp.2d 311 (D.N.H. 2010), a case which is, admittedly, factually similar to this case. In *Brown,* the firearms in

---

[5]The Eleventh Circuit explicitly declined to express an opinion on whether Howell could file an action under 42 U.S.C. § 1983 for the value of the firearms. *Howell*, 425 F.3d 977 n4. This Court similarly declines to express such an opinion. One of the cases upon which Howell relied, *Cooper v. City of Greenwood,* 904 F.2d 302 (5th Cir. 1990), was an action for damages under section 1983.

6

question were surrendered as a condition of release on bail; however, unlike the instant case, the arms were placed in the possession of a dealer rather than a law enforcement agency. *Id.* at 313. Although factually convoluted because of subsequent transfers of the firearms, and a belated attempt by the government to forfeit the firearms, the *Brown* court rejected the idea that continued ownership of firearms after a felony conviction amounts to constructive possession. *Id.* at 314-15. The *Brown* court appears to agree with *627 Firearms* that weapons to which a convicted felon has legal title, but not possession, can be sold for the owner's benefit. *Id.* at 317.

This Court, however, is bound by *Howell*. Although the firearms were neither seized from Henderson,[6] nor constituted contraband, nor were they forfeited, Henderson did not attempt to transfer ownership of the firearms to another person until <u>after</u> he had been adjudicated guilty and was a convicted felon.

For the reasons stated herein, the undersigned respectfully recommends the Motion to Return/Disposition of Property (Doc. #155), filed by former Defendant, Tony Henderson, as a *pro se* litigant, be **DENIED**, and the later motions (Docs. #162, #163, #165) requesting the same relief be **DEEMED MOOT**.

---

[6]The FBI did send Mr. Henderson a letter in December 2009 stating that the guns had been seized on June 9, 2006 (*see* Ex. 8). However, no basis for a seizure was provided in the letter. The firearms had been surrendered as a condition of bail. Until Henderson was adjudicated guilty December 6, 2007, he could have sought Court approval to have the firearms returned or transferred to another person. Moreover, the regulation cited by the FBI in its letter is an abandonment provision stating that if the owner of the firearms is known, he "shall be notified within 20 days of finding such property" and he would have thirty (30) days from the date of the notification letter to claim the property or the property would vest in the United States. 41 C.F.R. § 128-48.102-1. Since Henderson's cash bail was not exonerated until July 8, 2008 (Doc. #149), the basis for the FBI claim of abandonment is not clear, but there is nothing in the record to indicate the FBI notified Henderson that the firearms had been "seized" prior to the December 2009 letter.

**DONE AND ENTERED** at Jacksonville, Florida this 27th day of May, 2011.

*[signature: Thomas E. Morris]*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:

Honorable Timothy J. Corrigan

Asst. U.S. Attorney (Stoddard)

Tony Henderson, *pro se*